Commonwealth, Appellant, *v.* Sellers.

192

Argued April 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Louis R. Paulick*, Assistant District Attorney, with him *Robert L. Eberhardt*, Assistant District Attorney, *John M. Tighe*, First Assistant District Attorney, and *John J. Hickton*, District Attorney, for Commonwealth, appellant.

*J. Roi Jones*, for appellee.

OPINION BY PRICE, J., September 22, 1975:

Appellee was indicted for violation of The Controlled Substance, Drug, Device and Cosmetic Act.[1] Prior to

---

1. Act of April 14, 1972, P.L. 233, No. 64, §1 (35 P.S. §780-101) *et seq.*

trial, appellee's motion to suppress the evidence confiscated by the police was granted. Because the Commonwealth alleges that its case will be terminated if it is not permitted to appeal the suppression order, we will examine that order on its merits. *Commonwealth v. Deren,* 233 Pa. Superior Ct. 373, 337 A.2d 600 (1975). We agree with the Commonwealth's contention that the evidence was improperly suppressed and will, therefore, reverse the order of the lower court.

The facts as revealed in the record indicate that Pittsburgh police officers secured a warrant on February 9, 1974, authorizing a search of a 2½ story, brick dwelling located at 6512 Shetland Avenue. This dwelling was occupied by Harold "Rocky" Ford. In addition to a description of Harold Ford's involvement in drug dealing, the probable cause section of the search warrant contained the following statement:

> "The informant also stated to me that 'Rocky's' woman whose name he couldn't remember 'Stashes' the bulk of the 'Stuff' for 'Rocky' in the 'Crib' (the above mentioned premises) and replenishes he [sic] supply at his request."

The officers arrived at the location indicated in the warrant and, after stating their identity and purpose, were directed to Harold Ford's third floor bedroom. There, the officers observed Ford standing in the doorway to the bedroom and appellee lying nude in a bed in the room. The officers testified that there were numerous articles of women's clothing in the bedroom, as well as a handbag sitting on a nightstand.

The officers proceeded to execute the search of the room and its contents. As part of the search for narcotic drugs, the officers examined the handbag located on the nightstand. They removed from this pocketbook a pack of cigarettes which contained ten silver packets of heroin. No other contraband was discovered. Neither appellee nor Ford indicated in any manner that the handbag

belonged to appellee before the officers carried out the search. However, after papers and cards identifying appellee were discovered inside the pocketbook, she admitted ownership. The officers also discovered letters addressed to appellee at the Shetland Avenue address.

The lower court concluded that appellee was nothing more than a guest in the house and as such, her possessions could not be searched under the existing warrant. This determination was based on the cases of *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973), and *Commonwealth v. Reece*, 437 Pa. 422, 263 A.2d 463 (1970). However, a close examination of the factual situations in *Platou* and *Reece* reveal substantial differences from the facts in the instant case.

In *Platou*, police obtained a warrant to search the apartment of Robert Wander. Although the officers were informed that Peter Platou was a guest in the apartment, and there was no evidence to the contrary, the police searched his two suitcases which were in the apartment at the time. Our Supreme Court emphasizing that the police knew Platou was a visitor, held that the search of the suitcases was not covered under a warrant authorizing a search of the apartment because the warrant did not cover guests and their belongings and could not arbitrarily be so extended.

The facts of *Reece* indicate that the police staged a raid on a suspected drug party and searched the people present. After the police had been on the scene for several hours, Robert Reece entered the apartment ostensibly to find a friend who was at the party. The police identified themselves and proceeded to search Reece. The search was declared unconstitutional because the warrant authorized only a search of the apartment and did not include guests. The court noted that Reece gave the officers no reason to justify a warrantless search, and that his mere belated presence at the scene of a crime was not enough to justify an arrest.

In the case at bar, there is positive evidence that appellee was, in fact, not a mere visitor at the apartment. The clothing in the bedroom indicated the presence of more than just a casual visitor. And more significant, the mail addressed to appellee at the Shetland Avenue address belies any argument that appellee did not maintain a residence in Ford's house. Finally, neither appellee nor Ford indicated that appellee did not live in the house until after the search had been completed.

Even if we assume that appellee was merely a visitor, we would still be constrained to uphold the search of the handbag. Prior to the search, there was no indication that it belonged to a guest or was not to be considered as part of the general contents of the room. The officers noted numerous other items of women's apparel and accouterments, so the pocketbook was not, in that sense, unique. Just as the police were expected to search the dresser drawers, closet, and clothing found in the room, they would also be expected to search any bags and pocketbooks lying around which could obviously be used to secrete heroin. It would have been a dereliction of duty for the officers to fail to inspect areas and objects which were apparently part of the premises covered by the warrant and under the control of Ford. In addition, in light of the informant's statement that "Rocky's woman" replenished the supply of heroin, the police would have been more likely to view a woman's handbag with interest. And appellee's condition when the police officers entered would support the conclusion appellee was "Rocky's woman."

We are well aware that a search, illegal at its outset, can never be transformed into a valid police exercise by the evidence uncovered. *Commonwealth v. Pegram,* 450 Pa. 590, 301 A.2d 695 (1973); *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969). However, we are not in any way attempting to use a "bootstrap" theory to uphold the police action. We simply conclude that when we balance the interests of society against the interests

of the individual, *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973), there was nothing unreasonable about the search of the handbag.

The police made no attempt to search appellee, but only searched the room and the contents. Under the circumstances, the officers could have logically determined either that the pocketbook was part of the general contents of the room, or that appellee was a resident and that the pocketbook belonged to her. In either case, the search would have been permissible.

The order of the lower court suppressing the evidence found as a result of the search of the pocketbook is reversed.