402 A.2d 1047

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gilbert D. WHEATLEY.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 1978.

Decided May 4, 1979.

1

2

Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellant.

John H. Corbett, Jr., Assistant Public Defender, Chief, Appeals Division, Pittsburgh, for appellee.

Before CERCONE, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

■ The Commonwealth appeals from an order suppressing a handgun [1] which constituted the basis for charging Gilbert D. Wheatley, appellee, with violating the Uniform Firearms Law.[2] The handgun was located in the pocket of Wheatley's jacket, which was hanging on a kitchen chair. It was found by police who were executing a valid warrant to search for heroin and drug paraphernalia in the dwelling of Janet Craighead, the woman with whom Wheatley was living.

The evidence is uncontradicted. Police had probable cause to believe that Janet Craighead was dealing in heroin. Consequently, they obtained a warrant to search her residence at 1311 Paulson Avenue, Pittsburgh, Pennsylvania, for heroin and drug paraphernalia. They also had information that a man named "Hooks" was living with the suspect, but they were uncertain about the identity of this man. During their surveillance of the suspect's dwelling, however, Wheatley had been seen entering the premises on several occasions. On one of these occasions he was observed carrying a bag of groceries. Immediately prior to execution of the search warrant on November 19, 1976, appellee was seen entering the home attired in a black jacket.

1. The Commonwealth has a right of appeal because the suppression order has resulted in a termination of the prosecution. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963); *Commonwealth v. Nastari*, 232 Pa.Super. 405, 335 A.2d 468 (1975); *Commonwealth v. Pugh*, 223 Pa.Super. 112, 296 A.2d 864 (1972).

2. 18 Pa.C.S.A. §§ 6105 and 6106.

When police entered the home pursuant to the warrant, they found "in plain view on the table in the kitchen . . two shooting outfits consistent with the administering of the drug heroin into a person's veins, that being a small glass of water, two burnt caps, half-spoon foil, approximately one and a half, two inches square, opened up, syringes lying there and straps for the arms." When Wheatley was found at the entrance to the kitchen, he was not wearing a jacket, and his shirt sleeves were rolled up on his arms. Janet Craighead was also present. Police concluded that they "happened to catch them shooting up at the moment." Appellee and Craighead were immediately placed under arrest. Thereafter, a search of the premises was conducted. On the back of a chair in the kitchen was found a black jacket, one that looked like the jacket police had seen appellee wearing when he entered the house earlier that day. An examination of the jacket produced the handgun which prompted the bringing of firearms charges against appellee.

The Commonwealth contends that the seizure of the gun can be justified on two grounds. In the first place, it contends, the gun was discovered inadvertently during the execution of a valid warrant to search the premises for heroin. Secondly, the Commonwealth argues, the gun was discovered during a search incident to appellee's lawful arrest. If the police had a right on either grounds for examining the pockets of appellee's jacket, they were not required to ignore the gun there found or leave the premises and obtain a second warrant before seizing the same.[3] *Commonwealth v. Martin*, 252 Pa.Super. 265, 381 A.2d 491 (1977). See also: *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

In *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973), the police had a warrant to search and did search the apartment of one Robert Wander. During the search they

**3.** The trial court suppressed the handgun because it was of the opinion that police executing a search warrant for heroin could not seize evidence other than that identified in the warrant.

came across two suitcases which were claimed to be the property of a person known to be the guest of Wander. The police searched the suitcases, one of which was already open, and found marijuana. In holding the suitcase search unreasonable, the Supreme Court laid down the rule as follows: "If a warrant permits the search of premises or effects of a particular person . . . then it cannot be extended by the officer executing the warrant to include a search of things not belonging to or under the control of that person." 455 Pa. at 262–63, 312 A.2d at 32. "Personal belongings brought by their owner on a visit to a friend's house retain their constitutional protection until their owner meaningfully abdicates control or responsibility." Id., 455 Pa. at 267, 312 A.2d at 34.

In *Commonwealth v. Sellers*, 236 Pa.Super. 191, 344 A.2d 689 (1975), police had a warrant authorizing a search for narcotic drugs at a dwelling occupied by Harold Ford. In executing the warrant, police found Ford at the doorway to his bedroom and Sellers, the appellee, lying nude on the bed. Numerous articles of women's clothing were found in the bedroom, as well as a handbag on a nightstand. The police searched the room and its contents, including the handbag, where heroin was found. Appellee did not claim the handbag to be hers until the search had been completed. The Superior Court found the search of the handbag to be reasonable. It noted that Sellers had not been merely a casual visitor. Rather, the evidence strongly suggested that she had been making the house her home. "Just as the police were expected to search the dresser drawers, closet, and clothing found in the room," the Court said, "they would also be expected to search any bags and pocketbooks lying around which could obviously be used to secrete heroin. It would have been a dereliction of duty for the officers to fail to inspect areas and objects which were apparently part of the premises covered by the warrant and under the control of Ford." Id., 236 Pa.Super. at 195, 344 A.2d at 691. The Court concluded, therefore, that the police "could have logically determined either that the pocketbook was part of the

general contents of the room, or that appellee was a resident and that the pocketbook belonged to her. In either case, the search would have been permissible." Id., 236 Pa.Super. at 196, 344 A.2d at 691.

These decisions illustrate the observation made by Mr. Justice Stewart in *Coolidge* that once a line has been drawn which establishes the reasonableness of a police intrusion, "there is often not a great deal of difference between the situations closest to it on either side." *Coolidge v. New Hampshire*, supra, 403 U.S. at 474, 91 S.Ct. at 2042, 29 L.Ed.2d at 587. Nevertheless, there are several common threads which are apparent in the *Platou* and *Sellers* decisions. The first is that a warrant to search a person's premises or effects includes the authority to search things under the control of that person. The second principle which emerges is that control by the person named in the warrant will more readily be found where the effects belong to a resident of the premises than where the item to be searched belongs to a casual visitor.

In the instant case, appellee was a resident and not a casual visitor. When he entered the home on November 19, 1976, he removed his jacket and hung it over a chair in the kitchen of the home in which he resided. The jacket thereupon became a part of the general contents of the room. If exclusive control did not pass to Janet Craighead, she at least acquired sufficient control of the jacket to enable her to conceal a packet of heroin therein. Indeed, the jacket was as readily accessible to and subject to the control of Janet Craighead for this purpose as all other contents of the room, including other effects owned by Wheatley and located in the kitchen or other rooms of the house.

In addition, after the police had entered the home, they acquired probable cause to believe that appellee had been "shooting" heroin when they entered. Therefore, they could and did place him under immediate arrest. Appellee does not question the lawfulness of that arrest. His jacket was

hanging on a chair adjacent to the kitchen table on which police found the drug paraphernalia and suspected heroin. The search of the jacket, therefore, was also proper because it was incidental to a lawful arrest.

■ Searches incident to lawful arrests have been recognized and authorized by the United States Supreme Court in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). They may extend to areas within the immediate control of the person arrested. Such searches are justified on the grounds that they are necessary to protect the arresting officer against concealed weapons and also to prevent the concealment and destruction of the fruits of or the instruments used to commit the crime. *Commonwealth v. Bess*, 476 Pa. 364, 382 A.2d 1212 (1978); *Commonwealth v. Ayers*, 239 Pa.Super. 263, 361 A.2d 405 (1976).

Under the circumstances of this case, the search of appellee's jacket was clearly within limits of constitutional reasonableness. Police were properly in the Craighead home by virtue of a warrant to search for heroin. Appellee was a resident of the home who, when the police entered, was found under circumstances suggesting that he had himself been "shooting" heroin in the kitchen. He was placed under arrest. A jacket believed to be his was found on a chair near the same table where the drug paraphernalia had been found. For the police to have ignored the jacket under these circumstances would most certainly have constituted a dereliction of duty. They properly could and did search the jacket without first leaving the premises to obtain an additional warrant.

Reversed and remanded for further proceedings.

CERCONE, President Judge, and HOFFMAN, J., concur in the result.