416 A.2d 555

COMMONWEALTH of Pennsylvania

v.

Emanuel LYBRAND, Appellant.

Superior Court of Pennsylvania.

Argued Aug. 27, 1979.

Filed Dec. 7, 1979.

Reconsideration Denied Feb. 21, 1980.

Reargument Denied April 29, 1980.

Petition for Allowance of Appeal Denied July 29, 1980.

478

Raymond J. Takiff, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HOFFMAN, EAGEN and HESS, JJ.*

PER CURIAM:

Appellant, Emanuel Lybrand, was convicted of murder of the first degree following a jury trial in the Court of Common Pleas of Philadelphia and sentenced to a term of life imprisonment. Lybrand appeals from the judgment of sentence.

Lybrand first claims the court below erred in denying his motion for discharge for violation of Pa.R.Crim.P. 1100(a)(1).[1] By agreement of the Commonwealth and Lybrand, the delay at issue extends from September 6, 1973, the date of complaint, to April 29, 1975, the date on which counsel to replace Cecil Moore, Esquire, was appointed.

Following Lybrand's arrest, he retained Cecil Moore, Esquire, to represent him. After several delays, including a one-week continuance granted because defense counsel was unavailable, the preliminary hearing was waived on October 10, 1973. The case was first listed for trial on November 29, 1973, but continued because defense counsel was unavailable

---

* Chief Justice MICHAEL J. EAGEN of the Supreme Court of Pennsylvania, and Judge WARREN K. HESS of the Court of Common Pleas of Berks County, Pennsylvania are sitting by designation.

1. Pa.R.Crim.P. 1100(a)(1) directs trial in all cases in which a complaint was filed after June 30, 1973 but before July 1, 1974 to take place no later than 270 days from the date the complaint was filed.

owing to a lengthy out of town trial. The case was next called for trial on December 6, 1973, but defense counsel did not appear. The case was called on June 5, 1974, the last day before expiration of 270 days,[2] and on June 10, 1974, but counsel did not appear on those dates. On the latter date, a contempt citation was issued.

During this time period, after a meeting on April 8, 1974 among counsel, his associate, members of the Philadelphia Court of Common Pleas, Justice Nix of the Pennsylvania Supreme Court, and members of the District Attorney's Office of Philadelphia, defense counsel became involved in a special priority program for the disposition of his cases. The program was necessitated by defense counsel's backlog of one hundred twenty-six criminal cases, including twenty-two homicide cases, in the Philadelphia Court of Common Pleas, which had seriously hampered the fulfillment by the Commonwealth of its obligation to provide speedy trials. The special priority program was designed to expedite trial of defense counsel's backlog of cases in a fair and orderly manner. The cases were to be disposed of in chronological order beginning with motions and waivers and followed by jury trials beginning with the oldest case.[3] During the pendency of the program, defense counsel would refrain from accepting new cases.[4] Thus, on June 19, 1974 when the instant case was again placed in the "Ready Pool", defense counsel was engaged in the special priority program and unavailable for trial.

When the case was called on September 16, 1974, the Commonwealth requested a continuance because one of its key witnesses had been injured in an automobile accident.

2. This is a raw computation of the 270-day limit which does not take into account periods excludable under Pa.R.Crim.P. 1100(d).

3. The instant case was among the most recent cases in defense counsel's backlog and the only case subject to Pa.R.Crim.P. 1100.

4. In *Moore v. Jamieson*, 451 Pa. 299, 306 A.2d 283 (1973), although the Supreme Court found a prior regulation designed to control this problem defective, it upheld the Commonwealth's right to take corrective action under circumstances where it is physically impossible for counsel to dispose of cases without undue delay.

Nine days later, testimony on Lybrand's motion to suppress commenced. Defense counsel was only intermittently available for the lengthy suppression proceeding because of his other commitments both in and out of Philadelphia. On approximately nine of the ten days on which testimony was taken on the motion to suppress, defense counsel was available for only two or three hours. Testimony on the motion concluded, and the motion was denied on January 15, 1975. The case was returned to the "Ready Pool" and listed for trial on April 16, 1975 when Lybrand, who had privately retained Cecil Moore, Esquire, requested court appointment of different counsel. The case was continued for discussion and determination of the status of counsel until April 29, 1975 when new counsel entered the case.

Thus, although there was an approximate nineteen-month delay in this case, the Commonwealth was prepared to commence proceedings from November 29, 1973 until September 16, 1975, and the only thing which prevented the Commonwealth from proceeding was defense counsel's unavailability. Likewise, completion of the hearing on Lybrand's motion to suppress was hampered by the unavailability and limited availability of defense counsel. Delay resulting from the unavailability of defense counsel must be excluded from computation of the time for trial pursuant to Pa.R.Crim.P. 1100(d)(1).[5] Under the unique circumstances of this case, Lybrand is not entitled to a discharge for violation of Pa.R.Crim.P. 1100.[6]

5. *See Commonwealth v. Spells*, 259 Pa.Super. 271, 393 A.2d 822 (1978); *Commonwealth v. Richbourgh*, 246 Pa.Super. 300, 369 A.2d 1331 (1977), *allocatur refused.*

6. As a collateral matter, Lybrand asserts it was error for the court hearing the motion to discharge for violation of Pa.R.Crim.P. 1100 to consider testimony of an assistant district attorney, who participated in the meeting establishing the special priority program, regarding defense counsel's understanding of what the priority of his cases would be. We find no error in the motion court's consideration of the testimony of an officer of the court offered to show defense counsel's understanding of his responsibilities. The witness had first-hand knowledge of the official policy resulting from the meeting.

Lybrand next contends his statement should have been suppressed as the fruit of an illegal arrest. Considering the evidence of the Commonwealth's witnesses and so much of the evidence for the defense as remains uncontradicted, *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976), the events leading to Lybrand's arrest were as follows:

On the evening of September 6, 1973, two undercover policemen, members of a special unit designed to prevent and detect robberies and burglaries, were observing a state liquor store and a bar located in a high crime area. They observed Lybrand looking around outside the bar, entering, then exiting the bar, looking up and down the street, and walking away. Lybrand repeated these activities twice more, and thereby lead the officers to believe he was behaving in a suspicious manner. They left their vehicle, and when they approached Lybrand, one of the officers identified himself. Lybrand immediately put his hand in his pocket, and, as a result, the officer patted him down for a weapon. Lybrand was asked for identification and replied he had none. The officer commented he had felt a wallet and asked if it did not contain some identification. Lybrand then attacked the officer and was arrested for assault and battery on a police officer and resisting arrest. As a result of this arrest, Lybrand was taken to the police station. While there, he was recognized by another officer as matching a composite sketch drawn from descriptions given by two persons who had seen the murder victim and the person depicted together in the victim's apartment shortly before the murder occurred. On that basis, he was arrested for murder.

Clearly, under the circumstances the initial stop of Lybrand by the police was justified on the basis of his suspicious behavior. *See Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1973). Once Lybrand responded to being stopped by the officers by putting his hand into his pocket, a pat down was justified to protect the safety of the officers. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1966). Lybrand's unjustified attack on the

officer provided probable cause for his initial arrest for assault and battery. Further, because Lybrand matched the composite drawing of the suspect in a murder which had occurred the day before and because of the circumstances under which the drawing was obtained, there was probable cause for the arrest for murder. Thus, his statement was not the fruit of an illegal arrest.

■ Lybrand further contends his statement should have been suppressed as the product of an unnecessary delay between arrest and arraignment. *See Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). The relevant delay runs from the time Lybrand was arrested for murder, 9:00 p. m. on September 6, 1973, to the time he incriminated himself, 3:40 a. m. on September 7, 1973, or six hours and forty minutes. *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974). A delay of one and one half hours for transportation to homicide division was necessary administrative delay which does not enter into our consideration. *See Futch, supra.* During the five hours and ten minutes between Lybrand's arrival at homicide division and his confession, Lybrand was interviewed twice. The first interview lasted a little over one hour,[7] and, after it, Lybrand rested alone for twenty minutes. He then agreed to a polygraph examination, signed a consent form, waited one-half hour for arrangements for the examination to be completed, and was administered the polygraph examination. He rested alone for fifteen minutes and was reinterviewed for one hour and fifteen minutes. He refused food, but accepted coffee at 3:30 a. m., and confessed to the crime at 3:40 a. m. No force, threats, or promises were used to obtain the statement. Lybrand was alert and responsive throughout and did not appear to be under the influence of alcohol or drugs. The record of the suppression hearing supports the conclusion that the length of the delay and the circumstances surrounding Lybrand's confession do not establish a *Futch* violation. *See Commonwealth v. Coley*, 466 Pa. 53, 351 A.2d

---

7. During this interview, Lybrand gave an exculpatory statement in which he admitted he knew the deceased and had worked with her.

617 (1976); *Commonwealth v. Blagman,* 458 Pa. 431, 326 A.2d 296 (1974).

■ Lybrand contends the court's charge to the jury was erroneous in seven respects. (1) He asserts the court's definition of "reasonable doubt" was improper. The charge was proper. *Commonwealth v. Brown,* 470 Pa. 274, 368 A.2d 626 (1976). (2) He argues the court's definition of "indictment" led the jury to believe that a grand jury had already found Lybrand guilty and that they were merely a rubber stamp. Read as a whole, the charge fully instructed the jury that it was their responsibility to determine Lybrand's guilt or innocence and that the Commonwealth had the burden of proving guilt at trial beyond a reasonable doubt. *See Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975). (3) He claims a specific segment of the instructions implied Lybrand was the slayer, and thus removed the presumption of innocence. Read as a whole, the charge to the jury adequately stressed the presumption of innocence and the Commonwealth's burden of proof and did not imply Lybrand was the slayer. *See Stoltzfus, supra.* (4) He argues the charge regarding identification witnesses usurped from the jury their function of judging the credibility of witnesses. Again, read as a whole, the charge to the jury does not support this claim. (5) He asserts that, in commenting on the lengthy and extensive cross-examination of two Commonwealth witnesses, the court exhibited bias. The claim is waived for failure of defense counsel to object. Pa.R.Crim.P. 1119(b). (6) He argues the court's charge to the jury regarding availability of Commonwealth witnesses to the defense was error. Again, the claim is waived. Pa.R.Crim.P. 1119(b). (7) He argues the charge was erroneous in that it failed to advise the jury of the statutorily imposed penalty of life imprisonment for murder of the first degree and failed to define for the jury the areas of punishment. If read narrowly, subsection (b) of 18 Pa.C.S.A. § 1311 (Supp.1976–77) (now amended) might appear to have required the court to so inform the jury in this case. However, when read as a whole and in the context of Section

1311, subsection (b) clearly refers only to those situations in which the death penalty is a possible sentence. Furthermore, were the case now reversed and a new trial ordered, the amended version of the statute, 18 Pa.C.S.A. § 1311 (Supp.1979–80), would no longer require the court to inform the jury of possible sentences prior to the verdict.

Lybrand alleges the court exhibited bias in its decisions on what trial exhibits the jury was permitted to take out. With certain exceptions, decisions concerning what exhibits may be taken out by the jury are within the sound discretion of the trial judge. Pa.R.Crim.P. 1114. The decisions of the trial judge will not be reversed absent abuse of discretion. *Commonwealth v. Brown*, 467 Pa. 388, 357 A.2d 147 (1976); *Commonwealth v. Whyatt*, 235 Pa.Super. 211, 340 A.2d 871 (1975). Lybrand has not established that the trial judge in any way abused his discretion. Lybrand also contends the court erred in permitting the Commonwealth to set forth the names of witnesses it was making available to the defense and, thereby implied to the jury that Lybrand was required to put on a defense or that there was additional evidence against him. However, Lybrand did put on a defense, and the names supplied were those of persons whose relationship to the case was already known to the jury. Therefore, no prejudice to Lybrand could have resulted.

Numerous instances of error in the way in which the trial judge "administered his judicial function" are alleged. We have carefully examined each specific allegation and find nothing warranting reversal.

Finally Lybrand argues the trial judge committed error in instructing the jury to fix the penalty at life imprisonment. At the time of trial, the law required the imposition of a sentence of life imprisonment upon conviction of murder of the first degree; therefore, the court did not commit error when it directed entry of a judgment of sentence of life imprisonment.

Judgment of sentence affirmed.