## Commonwealth v. Harrison

*David B. Dowling, Assistant District Attorney,* for Commonwealth.
*Joseph Huss, Assistant Public Defender,* for defendant.

CALDWELL, *J.,* November 17, 1980—On June 26, 1980 defendant Victor Harrison's pretrial motion seeking suppression of evidence was denied after a hearing and defendant was subsequently convicted in a nonjury trial of theft by receiving stolen property and of unlawful possession of a controlled substance. Post-trial motions were filed and argued and are now before us for disposition. We find them to be without merit and affirm his convictions for both offenses.

On February 19, 1980 members of the Capitol Police Department observed defendant and a companion entering and exiting various Commonwealth buildings. They remained in each for only a few minutes before going to another. The Capitol

Police had at their disposal general descriptions of individuals to keep under surveillance when seen on State grounds in Dauphin County, and defendant's appearance fell within this category. These persons were suspected of being involved in various thefts of property from state owned buildings.

After being seen entering and exiting the buildings as previously described, defendant was stopped by members of the Capitol Police within a block or two of the area. As soon as he was approached, he was observed to have in his hands a portable telephone (also described as a radio) equipped with a long antenna and of a sophisticated nature. He nervously volunteered the information that he had found the device in one of the Capitol complex buildings. The nature of the telephone and the unlikely and unsolicited explanation led officers to request that defendant accompany them so that they could investigate. Within half an hour they learned that the property had been reported stolen from an office building in Harrisburg (non-government). Harrisburg City Police were notified and arrested defendant. Defendant received his Miranda rights and a search pursuant to that arrest turned up a quantity of marijuana on defendant's person. Both the radio device and the marijuana were admitted against defendant at his trial and he was found guilty as charged.

Initially we must address the issue of whether the Capitol Police had the authority to stop defendant and subsequently take him into custody when defendant, by that time, was no longer on Commonwealth property. Although the Commonwealth has based its supportive argument on The Administrative Code of April 9, 1929, P.L. 177, as amended, 71 P.S. §646(a-g), and more specifically relies on sec-

tion 646(g), which delineates the authority of the Capitol Police against loafers, trespassers, and the like, we note that section 646(h) also properly speaks to the present case. That provision in relevant part empowers the Capitol Police as follows:

"To arrest any person who shall damage, mutilate, or destroy the . . . buildings or structures, or commit *any other offense* within State buildings on State grounds in Dauphin County . . . and carry the offender before the proper alderman, justice of the peace or magistrate and prefer charges against him under the laws of the Commonwealth." (Emphasis supplied.)

Obviously this is a broad power and supports a stop vis-a-vis suspicious conduct personally observed and communicated among several members of the Capitol Police. Although the officers were unable to pinpoint exactly what offense might have been perpetrated, ample evidence existed for them to conclude that criminal activity might have been afoot. That determination having been made, the officers were justified in pursuing defendant and his companion for the purpose of a brief investigatory stop under the aegis of Terry v. Ohio, 392 U.S. 1 (1968). The fact that this lawful stop led to plain view evidence of a crime brought into play 42 Pa.C.S.A. §8901, which outlines the power of a policeman to arrest while in hot pursuit as follows:

"Any police officer of any political subdivision may arrest with or without warrant any person beyond the territorial limits of such political subdivision for a summary or other offense committed by such person within such political subdivision if the officer continues in pursuit of such person after the commission of the offense. The police officer shall

exercise under this section only the power of arrest which he would have if he were acting within the territorial limits of his political subdivision."

Defendant incorrectly relies on 71 P.S. §1564.1 (cited as §1561.1 in defendant's brief). That statutory provision uses the general term "watchmen" and furthermore is cross-referenced to 71 P.S. §646, in which the authority of the Capitol Police is expressly outlined. As indicated above, several provisions of section 646 are applicable to the present situation and adequately justify the very limited intrusion that the officer initially made into defendant's freedom of movement. Defendant had been observed entering and exiting the North Office Building and the Health & Welfare Building and appeared to be serving as a lookout while his companion entered and exited the comptroller's office. The time spent in each of the buildings was estimated as two to three minutes.

Terry, supra, the landmark Fourth Amendment "stop and frisk" case, presented a fact situation comparable to that with which we are presently confronted. In Terry an experienced officer on patrol for shoplifters and pickpockets noticed two men about 2:30 p.m. and although he could not pinpoint exactly what attracted his attention to them, he decided to watch them. He thereafter observed each man separately make numerous trips back and forth in front of a store window, look in, and then converse with his companion. At one time, a third man joined the conversation and then walked away. The others continued their vigil for several minutes and then followed in the direction of the third. The officer pursued them and sensing that they were perhaps "casing" the store for a hold-up, joined them when all three again began

conversing, identified himself as a police officer, and asked them for identification. The United States Supreme Court held that the officer's actions were proper from their inception and that his pat-down of defendant Terry for weapons was justified in view of the possible danger to the officer.

We determined that defendant was engaging in just that kind of conduct deemed suspicious by the Terry court and supportive of an investigatory stop.

The United States Supreme Court recently reaffirmed the holding of Terry in United States v. Mendenhall, 446 U.S. 544, 100 S. Ct. 1870 (1980). In an opinion addressing several Fourth Amendment issues, the stop of an airline passenger by DEA (Drug Enforcement Administration) officials was upheld as complying with the standards set forth in Terry and related cases. In Mendenhall a deplaning woman passenger was approached and asked for identification and her airline ticket because she fit a so-called "drug courier profile." The court opined that she was properly asked to accompany drug officials for further investigation when the names on her driver's license and ticket differed, she indicated her stay in California was for only two days, and she exhibited nervousness when she learned her questioner was a federal narcotics agent.

The recent Pennsylvania case of Com. v. Lybrand, _____ Pa. Superior Ct. _____, 416 A. 2d 555 (1979), follows the rationale in Terry and in the later decision in Adams v. Williams, 407 U.S. 143 (1972). In Lybrand, two undercover policemen were watching a state liquor store and a bar in a high crime area. In the course of their duties, they observed defendant looking around, entering and exiting the bar three times, again looking up and down the street, and then walking away. Deciding

that the conduct was suspicious, the officers stopped defendant and conducted a pat-down search when defendant put his hand in his pocket after one officer identified himself. Defendant, shortly thereafter, attacked the officer and was arrested for assault and battery. At the station he was recognized by another policeman as the man depicted in a composite sketch of a murder suspect and was arrested for that crime. In upholding both convictions, the court's treatment of the initial stop was cursory; it found clear justification existed under the circumstances "on the basis of his suspicious behavior." 416 A. 2d at 558-59. Lybrand amply supports a decision that the stop of defendant Harrison was warranted under controlling case law interpreting the Fourth Amendment and that probable cause to arrest may lawfully arise after the stop is made.

Terry and its progeny establish that probable cause to arrest need not exist to support the legality of a brief investigatory stop. The focus rather is on the individual facts of each case, and the observations of the law enforcement official that in the light of his experience persuade him that criminal activity may be afoot. See Terry at 30. To go further and make an arrest accompanied by a full search of the individual and the area within his control evinces the application of a stricter standard because of the greater intrusion into areas protected by exclusionary rules. Therefore, the legality of the initial stop in the present case would be insufficient to confer legality on the arrest of defendant *unless* probable cause existed to support that later action. We find that probable cause did exist to arrest defendant based on his observed behavior, his possession of an unusual, sophisticated communications tele-

phone, and his highly unlikely and voluntary explanation of how the device came into his possession.

As the companion decisions to Terry noted: "The existence or non-existence of probable cause can only be decided in the concrete factual context of each case." Com. v. Powers, 484 Pa. 198, 201, 398 A. 2d 1013 (1979), citing Sibron v. New York, 392 U.S. 40, 59 (1968). Language particularly applicable to the present case is found in Com. v. Legg, 258 Pa. Superior Ct. 294, 298, 392 A. 2d 801 (1978), in that the Legg court reiterated the long standing tradition that "pieces of information which are insufficient in themselves to establish probable cause may be assembled to establish this necessary predicate for arrest." In Legg a general description of a robbery suspect as a male negro, 5'11", 19 or 20 years old, and wearing a blue and white shirt, coupled with an anonymous tip on his whereabouts and his flight when confronted by an officer were held to constitute sufficient probable cause for his arrest. Legg clearly parallels the instant case in that the conduct of defendant in and around the State buildings would not have been sufficient grounds for his arrest, nor would his possession of the telephone standing alone or his conversation with the officer. All of these factors taken together, however, clearly meet the probable cause test delineated in numerous Pennsylvania decisions, that it "exists if the factual and circumstantial information available to the police at the time of arrest would justify a reasonably prudent man in the belief that a crime had been committed and that the individual arrested was the probable perpetrator." Com. v. Barnes, _____ Pa. Superior Ct. _____, _____, 417 A. 2d 656, 658 (1979). See also Beck v. Ohio,

379 U.S. 89, 91 (1964). The officer who stopped defendant Harrison testified to his familiarity with the radio equipment issued to Capitol personnel and to his observation that the telephone (radio) in question was not marked in any way as state equipment. He also indicated that it was not of the type used by the state police nor by a medical person in the Capitol complex area. Defendant's explanation for his possession of the device, therefore, provided the additional impetus for probable cause for his arrest.

In Com. v. Ellis, 233 Pa. Superior Ct. 169, 335 A. 2d 512 (1975) defendant's contention that his conviction was the product of an illegal search and seizure was rejected. Defendant had been arrested after an officer stopped him after he was observed walking through a high crime area at 2:00 a.m. carrying what appeared to be an adding machine but what in reality was a checkwriting machine. An arrest occurred after defendant tried to conceal the device. Several inconsistent explanations then were given on how defendant came to possess the device. The police learned after defendant's arrest that a burglary had occurred during which the checkwriting machine had been taken. Considering the facts of the instant case, the officer definitely had probable cause to arrest defendant. There were facts known particularly to this officer regarding the types of telephone (radio) devices used in the Capitol complex that gave him a unique ability to assess the credibility of defendant's story. Since the disposition of the probable cause issue turns on the facts of the individual case and focuses on the knowledge of the arresting officer, the probable cause requisites are fully satisfied here. Having decided that the initial stop was legal, we need

only comment that since the officer was where he had a right to be, his observation of the telephone (radio) in plain view is beyond complaint by defendant. See Harris v. United States, 390 U.S. 234, 236 (1968), which notes: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." The officer here indicated that when he approached defendant, Harrison's back was toward him and when he turned around, the device was in his hand. Since the Commonwealth has agreed with defendant's contention that an arrest occurred when the Capitol Police discovered that defendant had the telephone (radio), we need not discuss that issue. Rather we have structured our discussion from the viewpoint that there was an arrest at that time.

The final issue raised by defendant is whether the search leading to the discovery of marijuana on defendant's person was constitutionally permissible. We answer that issue affirmatively, pointing out that the only basis for the exclusion of that evidence would be that it was the product of an illegal arrest (here the arrest related to the telephone) and was precluded from admissibility as "fruit of the poisonous tree" under the rationale of Wong Sun v. United States, 371 U.S. 471 (1963).

We have held that the initial act of taking defendant into custody was supported by probable cause. Upon investigation, the Capitol Police learned that the Harrisburg Police had received a report of a stolen device meeting the description of the one found in defendant's possession. Subsequently, officers of the Harrisburg Police Department arrived at the Capitol Police station. Defendant was ar-

rested, advised of his constitutional rights, and searched. Marijuana was found on his person in plastic bags and was identified in a field test and subsequent laboratory tests. Discovery of that drug was the basis of defendant's conviction for unlawful possession of a controlled substance. We conclude that this arrest was supported by probable cause and that no taint existed because the Capitol Police had probable cause to take defendant into custody initially. Since defendant was arrested by the Harrisburg Police after it was learned that the crime of theft took place in a private building in Harrisburg, the search conducted by city law enforcement personnel was incident to a lawful arrest.

The United States Supreme Court summarized its position on such searches in United States v. Robinson, 414 U.S. 218, 235 (1973):

"The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

Pennsylvania cases are clearly in accord with

414

that holding. See, e.g., Com. v. Bess, 476 Pa. 364, 382 A. 2d 1212 (1978); Com. v. Wheatley, 266 Pa. Superior Ct. 1, 402 A. 2d 1047 (1979).

## ORDER

And now, November 17, 1980, defendant's post-trial motions are denied and he is directed to appear for sentencing at the call of the district attorney.