437 A.2d 760

COMMONWEALTH of Pennsylvania,

v.

Deborah Louise HOMSHER, Appellant.

Superior Court of Pennsylvania.

Submitted March 2, 1981.

Filed Nov. 30, 1981.

Thomas G. Klingensmith, Assistant Public Defender, Lancaster, for appellant.

Michael H. Ranck, District Attorney, Lancaster, for Commonwealth, appellee.

Before CERCONE, P. J., and WICKERSHAM and BROSKY, JJ.

WICKERSHAM, Judge:

On May 20, 1978, Trooper Lawrence E. Albert of the Pennsylvania State Police conducted an investigation at 20

Michele Lynn Drive, Lancaster, Pennsylvania. He had a search warrant for an apartment on the second floor occupied by one Fred Homsher which related to alleged gambling.[1] When Trooper Albert executed his search warrant, he found Fred Homsher, his wife Judith Homsher and his daughter Deborah Homsher, appellant, in the apartment. During the course of the search, which included the living room and several bedrooms, certain items were taken from a small three tier nightstand just adjacent to the bed in the room identified as that of the daughter, Deborah Homsher.

A    I seized those items personally and maintained them into evidence.

Q    What did you see?

A    The time of the seizure would be four thirty-three p. m., and the following items were seized from the top drawers of the three tier nightstand: Twelve cigarettes which were hand rolled, and containing a brown vegetation, seven various type pipes which contained residue or what appeared to be a residue of hash, five blue heart-shaped pills, one clip which is referred to as a roach clip which contained some type of burned material at the very end, two pipe heads which contained some type of burned ash, and one plastic baggie with another plastic baggie stuck inside.

Q    From your examination of the items that you seized were you able to make a preliminary determination of what that vegetable substance was?

A    It appeared to be marijuana.

. . . .

Q    At the time you seized these were any discussed by any of the occupants in the apartment?

A    Well, when I was called into that bedroom, Trooper Taylor was talking to Deborah Homsher and he advised her that she didn't have to say anything to us, may remain silent, she didn't have to say anything, at which time I readvised her of her *Miranda* Rights at four forty hours.

1. The validity of the search warrant is not in question here.

Q And after you readvised her of her *Miranda* Rights at four forty, what happened?

A I said, she said to me that these items that we have, then she said these items in my room from my pocketbook, they are my items.

Record at 31–32.

In March of 1979, Deborah Louise Homsher was tried before the Honorable Wilson Bucher and a jury on a charge of possessing a small amount of marijuana, to wit, less than thirty grams, only for personal use. The jury found her guilty of the charge and she took this direct appeal.[2]

The contention of the appellant is that at time of the search she lived in the apartment of her father Fred Homsher. Further that the police had information relating to her father's gambling activities and had obtained a search warrant for his premises. She claims that the Pennsylvania State Police knew during the course of their search of the apartment that it was her room and not her father's room into which the police extended their search of the premises. She argues that she had a reasonable expectation of privacy guaranteed her by the Fourth Amendment to the United States Constitution. She alleges that the search of her room therefore exceeded the scope of the search warrant and violated the holdings of *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973) and *Commonwealth v. Banahasky*, 250 Pa.Super. 495, 378 A.2d 1257 (1977).

We do not agree. This case is much closer to *Commonwealth v. Sellers*, 236 Pa.Super. 191, 344 A.2d 689 (1975).

In *Sellers*, Pittsburgh Police Officers secured a warrant authorizing a search of a two and half story brick building

2. At trial, Michael J. Rostolsky, represented Deborah Louise Homsher and on this appeal Thomas G. Klingensmith, of the office of the public defender. She presents two questions for our consideration.
    I. Whether it was error to deny the request to suppress the contraband found in the appellant's bedroom?
    II. Whether it was trial error for the court to deny the appellant's testimony concerning a "strip search" when said testimony would have shown to the jury appellant's state of mind at the time when she allegedly gave an inculpatory statement?

occupied by Harold Ford, a suspected drug dealer. When the officers arrived at the location indicated in the warrant, they were directed to Harold Ford's third floor bedroom.

There, the officers observed Ford standing in the doorway to the bedroom and appellee lying nude in a bed in the room. The officers testified that there were numerous articles of women's clothing in the bedroom, as well as a handbag sitting on a nightstand.

The officers proceeded to execute the search of the room and its contents. As part of the search for narcotic drugs, the officers examined the handbag located on the nightstand. They removed from this pocketbook a pack of cigarettes which contained ten silver packets of heroin. No other contraband was discovered. Neither appellee nor Ford indicated in any manner that the handbag belonged to appellee before the officers carried out the search. However, after papers and cards identifying appellee were discovered inside the pocketbook, she admitted ownership. The officers also discovered letters addressed to appellee at the Shetland Avenue address.

The lower court concluded that appellee was nothing more than a guest in the house and as such, her possessions could not be searched under the existing warrant. This determination was based on the cases of *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973), and *Commonwealth v. Reece*, 437 Pa. 422, 263 A.2d 463 (1970). However, a close examination of the factual situations in *Platou* and *Reece* reveal substantial differences from the facts in the instant case.

In *Platou*, police obtained a warrant to search the apartment of Robert Wander. Although the officers were informed that Peter Platou was a guest in the apartment, and there was no evidence to the contrary, the police searched his two suitcases which were in the apartment at the time. Our Supreme Court, emphasizing that the police knew Platou was a visitor, held that the search of the suitcases was not covered under a warrant authorizing a search of the apartment because the warrant did not cover

guests and their belongings and could not arbitrarily be so extended.

The facts of *Reece* indicate that the police staged a raid on a suspected drug party and searched the people present. After the police had been on the scene for several hours, Robert Reece entered the apartment ostensibly to find a friend who was at the party. The police identified themselves and proceeded to search Reece. The search was declared unconstitutional because the warrant authorized only a search of the apartment and did not include guests. The court noted that Reece gave the officers no reason to justify a warrantless search, and that his mere belated presence at the scene of a crime was not enough to justify an arrest.

In the case at bar, there is positive evidence that appellee was, in fact, not a mere visitor at the apartment. The clothing in the bedroom indicated the presence of more than just a casual visitor. And more significant, the mail addressed to appellee at the Shetland Avenue address belies any argument that appellee did not maintain a residence in Ford's house. Finally, neither appellee nor Ford indicated that appellee did not live in the house until after the search had been completed.

Even if we assume that appellee was merely a visitor, we would still be constrained to uphold the search of the handbag. Prior to the search, there was no indication that it belonged to a guest or was not to be considered as part of the general contents of the room. . . . Just as the police were expected to search the dresser drawers, closet, and clothing found in the room, they would also be expected to search any bags and pocketbooks lying around which could obviously be used to secret heroin. It would have been a dereliction of duty for the officers to fail to inspect areas and objects which were apparently part of the premises covered by the warrant and under the control of Ford. . . .

*Commonwealth v. Sellers, supra, id.,* 236 Pa.Super. at 194–195, 344 A.3d at 690–91.

In *Commonwealth v. Wheatley*, 266 Pa.Super. 1, 402 A.2d 1047 (1979), the Commonwealth appealed from an order suppressing a handgun which constituted the basis for charging Wheatley, appellee, with violating the Uniform Firearms Law. The handgun was located in the pocket of Wheatley's jacket which was hanging on a kitchen chair. It was found by police who were executing a valid warrant to search for heroin and drug paraphernalia in the dwelling of Janet Craighead, the woman with whom Wheatley was living.

After reviewing *Platou* and *Sellers*, Judge Wieand speaking for our Court said:

> Nevertheless, there are several common threads which are apparent in the *Platou* and *Sellers* decisions. The first is that a warrant to search a person's premises or effects includes the authority to search things under the control of that person. The second principle which emerges is that control by the person named in the warrant will more readily be found where the effects belong to a resident of the premises than where the item to be searched belongs to a casual visitor.

*Commonwealth v. Wheatley, id.*, 266 Pa.Super. at 6, 402 A.2d at 1050.

Instantly, we hold that it would have been a dereliction of duty for the officers to fail to inspect areas and objects which were obviously part of the premises covered by the search warrant and under the control of Fred Homsher. Appellant was not a guest but a resident of the apartment occupied by her father, Fred Homsher and gambling paraphernalia could very easily have been secreted throughout her bedroom. The police had a perfect right to search as they did and we affirm the action of the suppression court below.

In *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the police agents had an arrest warrant for Ricky Lyons when they entered the home of Hoyt Gaultney in search of Lyons. While in the Gaultney home, looking for Lyons, the officers discovered cocaine and other

incriminating evidence. The United States Supreme Court through Justice Marshall said:

The question before us is a narrow one. The search at issue here took place in the absence of consent or exigent circumstances. Except in such special situations, we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant.

*Id.* at 211, 101 S.Ct. at 1647, 68 L.Ed.2d at 45.

Instantly, the police had a search warrant for the apartment occupied by Fred Homsher. The police were looking for gambling paraphernalia and had every right, pursuant to the search warrant, to carefully go through the rooms and the contents of the rooms. The incriminating evidence thereby discovered was admissible at trial against appellant, Deborah Homsher.

The final contention on appeal was waived as it was not raised by appellant before the lower court nor was it discussed by the lower court in its opinion, Only those issues included in post-verdict motions will be considered preserved for appellate review. *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979).

Judgment of sentence affirmed.