Commonwealth *v.* Gillis et al., Appellants.

Argued June 9, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Harold B. Vikoren,* Assistant Public Defender, for appellants.

*Michael F. O'Brien,* Assistant District Attorney, with him *Ward F. Clark,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, September 18, 1970:
Judgments of sentence affirmed.

CONCURRING OPINION BY HOFFMAN, J.:

Appellants were convicted by a jury on indictments charging them with burglary, larceny, receiving stolen goods, and conspiracy. From judgment of sentence, they bring this appeal. The relevant facts are as follows:

Shortly after 7:00 P.M., on January 10, 1968, one Mildred Kaufman heard running footsteps in her house, when she returned home. Upon opening the door, she saw a man whom she described as short, white, and in dark or black clothing. The police arrived minutes later and found the rear door ajar, its lock assembly bent and open. They also saw two sets of adult footprints in the snow, leading from the back of the house. One officer remained in the Kaufman house to determine the extent of the burglary. Rooms were found in disarray, and Mrs. Kaufman confirmed that certain pieces of jewelry and money were missing. The other officer followed the footprints for approximately two city blocks, in the direction of the Big Oak Service Station.

While this investigation was taking place, two other officers, unaware of the burglary, were summoned to the Big Oak Service Station as a result of the owner's complaint about two suspicious men soliciting rides from customers. When they arrived, one officer interrogated the station owner. The owner stated he was suspicious of the pair because they seemed anxious to get a ride and had stationed themselves in the area where he kept his unattended cars awaiting service. The officers proceeded to question both appellants, not having found it necessary to frisk them first. Appellant Gillis told the officers that he and appellant Boykins were from out of town and that they were looking for rides home. He asserted that they were in town to see a girl, one Betty Jackson whom they had met at

Bono's Cafe. They had been riding with her, but following an argument, she ordered them out of her car.

The officers were dissatisfied with the appellants' stories and decided to place them under "technical arrest" and take them to the police station. They frisked them pursuant to that arrest. On frisking appellant Boykins, the officer heard jingling and, upon reaching into his pockets, felt quarters. They then patted down appellant Gillis and, on feeling a bulge, reached in and felt watch bands and other items.

At about the same time, the officer who had been investigating the Kaufman burglary arrived at the service station, advised the officers of the burglary, and noted that Gillis fitted the description of one of the burglars. The appellants were then told that they were under arrest for burglary and were taken to the police station, where the items found in appellants' pockets were seized.

Numerous trial errors were raised by counsel, but only one alleged error merits our attention here. Both appellants argue that their Fourth Amendment rights were violated by an unlawful search and seizure and that the court below erred in denying appellants' motion to suppress the evidence thereby discovered.

The Commonwealth contends that the officers acted within the scope of their constitutional authority in conducting a limited frisk of appellants. They argue that where a police officer observes unusual conduct which reasonably leads him to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous, he is authorized to conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which may be used against him. *Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 1884-1885 (1968): *Commonwealth v. Hicks*, 434 Pa. 153, 158-159, 253 A. 2d 276, 279 (1969).

To justify this type of protective search, however, a police officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous; good faith on the part of the officer is not enough. *Sibron v. New York*, 392 U.S. 40, 64, 88 S. Ct. 1889, 1903 (1968) ; *Terry v. Ohio*, supra; *Commonwealth v. Berrios*, 437 Pa. 338, 341, 263 A. 2d 342, 343 (1970) ; *Commonwealth v. Hicks*, supra.

In the case at bar, the police officer who frisked appellants observed no such conduct. There is no testimony that indicated that the officers had reason to believe that appellants were armed and dangerous. If the officers did believe that they were in danger of harm from concealed weapons, they would have been justified in frisking appellants for weapons before they had begun their interrogation. The fact that they frisked appellants only after questioning them indicates that they were not fearful for their own safety or that of others in the area.

The frisk would also be lawful if it were incident to a legal arrest. *Commonwealth v. Ellsworth*, 421 Pa. 169, 177, 218 A. 2d 249, 253 (1966). A lawful arrest, however, must be predicated upon probable cause, and if a warrantless arrest cannot be justified by probable cause, a warrantless search incident thereto is unlawful. *Commonwealth v. Goslee*, 427 Pa. 403, 406-407, 234 A. 2d 849, 850 (1967). The police officer who put appellant under "technical arrest" had no knowledge that a burglary or any other crime had been committed at the time of the frisk. His assertion that appellants looked suspicious and that he did not believe their story is insufficient justification for an arrest. Though the arresting officer need not have in hand evidence which would suffice to convict, an arrest with or without a warrant must stand upon firmer ground than mere suspicion. *Commonwealth v. One 1958 Plymouth Sedan*, 418 Pa. 457, 464, 211 A. 2d 536, 539-540 (1965).

However, the instant search may be sustained upon another ground. If the evidence discovered through the unlawful frisk would have been obtained by independent means, then the evidence so obtained is not "tainted" by the original illegality. *Wong Sun v. United States,* 371 U.S. 471, 487-488, 83 S. Ct. 407, 417 (1963). Here, upon the arrival of the officer investigating the burglary, probable cause for an arrest came into existence. At this point, there was evidence of a specific crime committed nearby a few minutes before, and there was also a description given which fitted one of the appellants. Had the first two officers released appellants after a brief detention for the purpose of questioning as they should have done, the gap in time between their release and the arrival of the third officer would have been only a matter of seconds. It is highly unlikely under these circumstances that appellants could have avoided capture and a subsequent search of their persons.

The items discovered during the illegal frisk thus would have been found as a result of a search incident to a legal arrest after the arrival of the officer who had been investigating the burglary. The search and seizure which occurred at the police station, therefore, was also sufficiently distinguishable to be purged of the taint of the bad frisk.

I therefore concur in affirming the convictions.