Commonwealth *v.* Bourke, Appellant.

Argued April 15, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Dante G. Bertani*, Public Defender, with him *Ila Jeanne Sensenich*, Assistant Public Defender, for appellant.

*Albert M. Nichols*, Assistant District Attorney, with him *John F. Kradel* and *Henry A. Martin*, Assistant District Attorneys, and *John N. Scales*, District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., June 22, 1971:

This is an appeal by Patrick Bourke from his conviction and sentence on indictments charging possession of narcotics. He seeks a new trial, alleging error in the lower court's denial of a motion to suppress evidence timely made before trial and the subsequent admission of that evidence into the record at his nonjury trial before Hon. RICHARD E. McCORMICK, Judge. He raises Fourth Amendment questions, contending that his warrantless arrest as well as the warrantless ("stop and frisk") search of his person lacked probable cause.

This appellant was arrested and searched while he was attending a corn and pig roast on Cereal Hill in North Huntingdon Township, Westmoreland County, Pennsylvania, on October 3, 1969. The picnic area where his arrest occurred was at least 25 to 50 yards from two house trailers which had been under surveillance by the police of North Huntingdon Township from July 28, 1969, to October 2, 1969; and warrants granting the police the right to search these mobile homes were obtained by them on October 3, 1969. Since these warrants named no individuals and limited the search to the homes themselves, the actions of the police in conducting the subsequent raid demonstrate a flagrant disregard of the constitutional rights of the defendant, especially in view of the complete lack of probable cause to arrest or search the defendant and in light of the law as it was developed on Fourth

Amendment rights at the time of this arrest. Even before their arrival on the scene, the police, in consultation with participating officers of the state police, state narcotics agents, and liquor control board agents, ignoring the limitation in the warrants, planned how they would search the entire area and any person caught in their dragnet, and divided up the areas to be searched, distributing the areas among the available raiders. Immediately upon the officers' arrival on the scene, this defendant, who was found in an area of the picnic grounds assigned to narcotic agent Joseph D. Rause, was accosted by him and searched. He testified: "A. My first observation was a group of people—persons around a fire in the picnic area sitting, standing, and at this time I arrived there I identified myself and told everyone to remain standing still, not to move, that they were—they were under arrest at this time. . . . My particular assignment was to go to the picnic area where a pig roast was going on and to detain these people in that area. . . . Q. Now, where did you first see these defendants in that area, if you recall? A. In the picnic area around the fire. They were all sitting around approximately—I would say approximately ten of them persons were in the area at that time within five yards of each other in the circular—it would be—it would be a diameter, I would say, five yards diameter where most of these people were sitting around the fire. Some of them were standing, some sitting. Q. What, if anything, were these people doing? A. At the time that I arrived and Chief Carl Gryzbowski, of the North Huntingdon State Police—North Huntingdon Police, and several members of the Pennsylvania State Police, they were just sitting there smoking cigarettes or eating, and I didn't observe too much. I was more concentrated—concerned about anyone running or moving—keeping my eye to see if

anybody had any weapons. Q. Did anybody move? A. No, they didn't. Q. And what did you then do? A. At that time I proceeded to search each person individually. We had a guard around each person—around the area and each person individually was brought to me, and I personally searched them for weapons to see if they had any drugs or narcotics on their person, and after each individual was searched, they were sent to a waiting car to be sent down to the North Huntingdon Police Station to be further processed and fingerprinted and so on. . . . A. Of the four defendants, the only person that I found anything on was Mr. Patrick Bourke who had two envelopes of marijuana in his shirt pocket which was clearly visible by my means."

The Commonwealth attempts to justify this search and arrest by claiming that there were reports of weapons in the area and that guns were found in the trailers and around the picnic grounds, and also, that Officer Rause had cause to search the defendant because he could see the two envelopes in his pocket. These contentions are without merit. First, it is obvious from Officer Rause's testimony that there was no threat of violence by any of the picnickers to justify a search for weapons. Secondly, the visible envelopes, although they might arouse the suspicion of an alert police officer, could not justify the stopping and frisking of the defendant.

Very little discussion of the settled law should be necessary in this case. However, the recent case of *Commonwealth v. Reece*, 437 Pa. 422, 263 A. 2d 463 (1970), in which Mr. Justice EAGEN reiterated the law on probable cause for arrest and the necessity for a valid arrest before a search and the limits thereof, contains principles which are applicable and controlling. Also see our unanimous per curiam decision in *Commonwealth v. Gillis*, 217 Pa. Superior Ct. 159, 269 A.

2d 135 (1970), in which Hon. J. SYDNEY HOFFMAN, Judge, wrote and filed a concurring opinion which included a comprehensive restatement of the current applicable law on stop and frisk.

Judgment of sentence reversed and new trial granted.