422 A.2d 601

COMMONWEALTH of Pennsylvania

v.

Michael LUDDY, Appellant.

COMMONWEALTH of Pennsylvania,

v.

Filomena LUDDY, Appellant.

COMMONWEALTH of Pennsylvania,

v.

Edmund LUDDY, Jr., Appellant.

Superior Court of Pennsylvania.

Argued March 10, 1980.

Filed Oct. 31, 1980.

Petition for Allowance of Appeal Denied Feb. 18, 1981.

542

544

546

Hillel Lewis, Philadelphia, for appellants.

John J. Kevlock, Assistant District Attorney, Doylestown, submitted a brief on behalf of Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

SPAETH, Judge:

This is a consolidated appeal by three members of the same family, Filomena Luddy and her sons Edmund and Michael. Filomena Luddy, appellant in No. 615, and Edmund Luddy, appellant in No. 616, were convicted of unlawful possession of a controlled substance. Michael Luddy, appellant in No. 514, was convicted of unlawful possession of a controlled substance, possession with intent to manufacture or deliver a controlled substance, and conspiracy. Three issues have been raised: 1) whether the evidence was sufficient to support Filomena Luddy's conviction; 2) whether Edmund Luddy was illegally searched; and 3) whether the warrant pursuant to which the Luddy residence was searched was a valid warrant.

1

Filomena Luddy was convicted of possession of two small bags of marijuana found in the crisper compartment of the refrigerator in the kitchen of the Luddy residence. The principles by which we must judge the sufficiency of the evidence to sustain her conviction are well settled.

 Our Supreme Court has said repeatedly that "illegal possession of narcotic drugs is a crime which 'by its very nature is unique to the individual. By definition, the possessor is the only person who could commit the crime. Guilt by association . . . is unacceptable.'" *Commonwealth v. Chenet*, 473 Pa. 181, 184–185, 373 A.2d 1107, 1108 (1977), *quoting Commonwealth v. Fortune*, 456 Pa. 365, 368–69, 318 A.2d 327, 328 (1974), *in turn quoting Commonwealth v. Reece*, 437 Pa. 422, 427, 263 A.2d 463, 466 (1970). Accordingly, if the Commonwealth is unable to prove the defendant's actual possession of the drugs, it must prove constructive posses-

sion. To prove constructive possession the Commonwealth must prove that the defendant had both the power to control the contraband and the intent to exercise that control. *Commonwealth v. Townsend,* 428 Pa. 281, 237 A.2d 192 (1968).

Constructive possession may be inferred from the totality of the circumstances. *Commonwealth v. DeCampli,* 243 Pa.Super. 69, 364 A.2d 454 (1976). However, evidence that the defendant was one of a group of persons on the scene where the contraband was found is insufficient to support an inference of constructive possession. This is so because "the fact of possession loses all persuasiveness if persons other than the accused had equal access with him to the place in which the property was discovered: 9 Wigmore on Evidence (3rd ed.) § .2513." *Commonwealth v. Kauffman,* 155 Pa.Super. 347, 351, 38 A.2d 425, 427 (1944). "[T]he evidence must establish that the [defendant] had a conscious dominion over the contraband." *Commonwealth v. Fortune, supra,* 456 Pa. at 368, 318 A.2d at 328.

It is instructive to consider cases in which the evidence was held insufficient to establish such conscious dominion. In *Commonwealth v. Tirpak,* 441 Pa. 534, 272 A.2d 476 (1974), the police found seven persons, among them the four defendants, in a game room where there was an open jar containing marijuana and an ashtray containing the butts of four marijuana cigarettes; no marijuana was found on the person of any of the defendants, and none of them was seen smoking marijuana cigarettes. The Supreme Court held this evidence insufficient to prove the defendants' constructive possession of marijuana. In *Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971), the police found the defendant, another man, and a woman in the woman's apartment, and in a closet in the basement, stolen dresses; the woman had keys to the closet, and there was no evidence that the defendant also had access to the closet. The Supreme Court held this evidence insufficient to prove the defendant's constructive possession of the stolen dresses. In *Commonwealth v. Fortune, supra,* the police found twenty–one pack-

ets of heroin on the floor in the doorway between the kitchen and rear shed. No one was in the kitchen or rear shed; three men and a woman were in the living room. The defendant, after the police entry, came downstairs, went through the living room, and entered the kitchen, where an officer was picking up the packets of heroin from the floor. The defendant said, "Don't lock me up." Holding this evidence insufficient, the Supreme Court stated:

There is no evidence that the [defendant] had any knowledge of the presence of the drugs in her home prior to the arrival of the police. The [defendant's] residency in the home does not establish any such knowledge. We cannot assume that a resident of a home, where guests are present, knows of the full contents of the premises. The [defendant's] remark, "Don't lock me up," is at best equivocal as to whether the [defendant] had any prior knowledge that drugs were on the premises. 456 Pa. at 369, 318 A.2d 329.

In *Commonwealth v. Chenet, supra*, the police waited at the defendant's trailer until the defendant's roommate arrived with his girlfriend. The police then searched the trailer and found a few marijuana seeds on the kitchen floor, marijuana cigarette butts in an ashtray in the living room, and a "baggie" containing marijuana residue in the living room. The police also found some 80 grams of marijuana in a milk delivery box attached to the trailer hitch. They remained at the trailer until the defendant arrived, and found two marijuana cigarettes in the console of the car he was driving; the car belonged to the defendant's attorney. Holding this evidence insufficient, the Supreme Court stated:

The marijuana found in and around the trailer was in the living room, kitchen and outside area immediately adjacent to the trailer. All of these areas were equally accessible to [the defendant's] roommate and his girlfriend. No marijuana was found in [the defendant's] room nor on [the defendant's] person. The marijuana found in the car which belonged to [the defendant's] attorney was the only evidence which could implicate [the

defendant]. We believe, however, the Commonwealth has failed to prove beyond a reasonable doubt that [the defendant] knew about and was in possession of two marijuana cigarettes in a third party's car.

473 Pa. at 185, 373 A.2d at 1109.

■ Here, the evidence was insufficient to establish that appellant Filomena Luddy had conscious dominion over the two bags of marijuana in the crisper compartment of the refrigerator. She was one of four adults living in the house. No marijuana was found on her person or in her room. At the time the police arrived there were five other adults including two of her sons in the house; a third son was in the yard outside. Not only was there no direct evidence indicating that she knew that the marijuana was in the crisper but there was no evidence on how long it had been there or who had put it there.

■ At the time the police arrived, appellant was in the kitchen preparing a roast. From this the lower court concluded that she was "aware of and likewise in possession of the content[s] of the refrigerator" because "the person performing the cooking function for the family unit, in this case [appellant], is the captain of that particular ship." Slip op. at 21. Reference to "the captain of a ship" may be appropriate where the issue is vicarious civil liability, but not where it is criminal liability. Moreover, there is no evidence that appellant was "the captain"; as mentioned, the other six persons there were all adults; nothing suggests they were under appellant's control. So far as appears, they all had equal access to the refrigerator. Anyone of them might have put the marijuana in the crisper compartment, without appellant's knowledge. Merely because appellant was in the kitchen does not establish that she knew the marijuana was in the crisper. *Commonwealth v. Fortune, supra.* But even if knowledge were established, control would still have to be separately established. In *Commonwealth v. Tirpak, supra,* where the marijuana was in an open jar in the center of the room, the defendants almost certainly had knowledge of its presence, yet the Supreme Court found this insufficient to prove constructive possession.

Accordingly, appellant's motion for an arrest of judgment must be granted.

2

When the police arrived with the search warrant at the Luddy residence, they spotted appellant Edmund Luddy working in a shed near the house. One of the officers in the search party was detailed to take appellant into custody. This was done because appellant was recognized as one of those named in the warrant as residents of the property to be searched.[1] The warrant, however, did not authorize a search of his person, nor, in contrast to his two brothers Michael and Richard, was he mentioned in the probable cause section of the warrant. After apprehending appellant, the officer conducted a patdown search during which he felt in appellant's inside shirt pocket an object that he believed to be a small knife. When examined, the object proved to be a three inch syringe with its cover in place. The officer arrested appellant for possession of a syringe and conducted a full search of his person during which small quantities of methamphetamine hydrochloride and marijuana were discovered.

Appellant moved to suppress the methamphetamine and marijuana, but the motion was denied and they were admitted in evidence at trial; it is for their possession that appellant has been convicted.

■ It is settled that a warrant authorizing the search of a building does not authorize the search of either the persons, *Commonwealth v. Reece*, 437 Pa. 422, 263 A.2d 463 (1970), or the property. *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973) *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974) of those who merely happen to be present when the warrant is executed. Nor does the Commonwealth argue that the search warrant for the Lud-

1. The first paragraph of the application for the warrant, entitled "Identify items to be searched for and seized (be as specific as possible)," reads: "Marijuana, L.S.D. or other controlled substances, scales and other drug paraphernalia and evidence of occupantcy of Michael, Edmund, Richard and Filomena Luddy."

dy residence in itself authorized the search of appellant's person. Instead, it argues that "officers executing a search warrant [have] a right to attend to the security of the premises to be searched, and the environs of those premises, in accordance with the general principles set forth by the United States Supreme Court in *Terry v. Ohio* [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889], . . ." Commonwealth's Brief at 14. This very argument, however, was made in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), and was rejected.

In *Ybarra* the police had a warrant based on probable cause to search a tavern for heroin, other controlled substances, and paraphernalia. Upon entering the tavern, the police announced their purpose and advised all those present that they were going to conduct a "cursory search for weapons." One of the officers then proceeded to pat down each of the 9 to 13 customers in the tavern. Ybarra was one of those customers. When the officer patted Ybarra down, he felt in Ybarra's pants pocket what he described as "a cigarette pack with objects in it." The officer made a second search, in which he took the pack from Ybarra's pocket, and found six packets of heroin inside it. The State argued that the patdown was a reasonable frisk for weapons, authorized by *Terry*, and that as this patdown had yielded probable cause to believe that Ybarra was carrying narcotics, the second search, of Ybarra's pocket, was justified. Emphasizing the important governmental interest in controlling narcotics and the ease with which narcotics may be hidden, the State further argued that when executing a search warrant, the police should be authorized to search persons on the premises who they reasonably believe are connected with drug trafficking and may be concealing contraband. Although three Justices accepted the State's argument, the other six did not. Speaking for the majority, Justice STEWART held that the patdown of Ybarra could not be justified on the basis of the desire by the police to secure the premises they planned to search, but could only be justified if the conditions of the "narrow" exception

created by *Terry* to the requirement of probable cause were satisfied. Under this narrow exception, the officer was not entitled to patdown Ybarra unless he had a reasonable belief that Ybarra "was armed and presumably dangerous" 444 U.S. at 92, 100 S.Ct. at 343. However, no such reasonable belief was shown: "[T]he State is unable to articulate any specific fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous." *Id.* at 93, 100 S.Ct. at 343. Accordingly, the conditions of the narrow exception created by *Terry* were not satisfied, from which it followed that the patdown of Ybarra was not justified, from which it further followed that the search of Ybarra's pants pocket was also not justified.

■ So here, the Commonwealth did not articulate any specific fact that could have justified a belief by the officer that appellant was armed and presently dangerous. The chief of police testified at the suppression hearing that weapons had been found at the Luddy residence previously. This testimony was insufficient to justify the patdown of appellant. There was no evidence that any weapons violation had occurred, or that there was any connection between appellant and those weapons. In *Commonwealth v. Bourke*, 218 Pa.Super. 320, 280 A.2d 425 (1971), the police, in the course of executing warrants authorizing the search of mobile homes, to look for narcotics there, proceeded to search each person in the area for weapons; of the four defendants thus searched, one was found to have two envelopes of marijuana in his shirt pocket. The Commonwealth argued that the search was justified because "there were reports of weapons in the area and . . . guns were found in the trailers and around the picnic grounds . . . ." 218 Pa.Super. at 323, 280 A.2d at 427. We found this argument without merit, because "it is obvious from [the officer's] testimony that there was no threat of violence by any of the picnickers to justify a search for weapons." *Id.* *And see Commonwealth v. Reece*, 437 Pa. 422, 263 A.2d 463 (1970); *Commonwealth v. Gillis*, 217 Pa.Super. 159, 269 A.2d 135 (1970) (Concurring opinion by HOFFMAN, J.)

There is a direct chain of events from the patdown of appellant to the discovery of the drugs he was convicted of possessing. If he had not been patted down, the syringe would not have been found in his pocket; if he had not been arrested for possession of the syringe and subjected to a full search, the methamphetamine and marijuana would not have been found. Thus, the methamphetamine and marijuana represented the fruits of an illegal search, and appellant's motion to suppress should have been granted. Since it was not, appellant must be granted a new trial.[2]

3

The affidavit in support of the application for the search warrant for the Luddy residence was not well drafted. The Commonwealth admits as much. Any search warrant affidavit must give the issuing authority the basis for making an independent judgment that probable cause for a search exists at that time. This foundation must meet the constitutional tests laid down in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In Pennsylvania, nothing outside the written search warrant affidavit may be considered in determining the existence of probable cause. Pa.R.Crim.P. 2003(a). However, it is also clear that search warrant affidavits are to be read in a sympathetic, common sense manner, with due regard for the hectic conditions under which they are often prepared. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Commonwealth v. Billock*, 221 Pa.Super. 441, 289 A.2d 749 (1972). Furthermore, an affidavit is to be considered as a whole, *Commonwealth v. Bryant*, 247 Pa.Su-

2. Appellant has argued that the officer's testimony that he thought a three inch covered syringe standing upright in an inside shirt pocket felt like a knife (as opposed to a pen or pencil) was incredible, and that the syringe, which had no controlled substance in it, by itself did not provide probable cause for arrest. Given our conclusion that the patdown was illegal, we need not consider these arguments.

Appellant has also argued that his motion in arrest of judgment should have been granted. This argument is without merit. Had the evidence been properly obtained, it was sufficient to support appellant's conviction.

per. 386, 372 A.2d 880 (1977), and a successful attack on part of it will not invalidate the warrant if enough remains to establish probable cause, *Commonwealth v. Tucker*, 252 Pa. Super. 594, 384 A.2d 938 (1978).

The first paragraph of the probable cause section of the affidavit before us recounts an incident that took place more than four months prior to the issuance of the warrant. By itself this information would be stale and not support a finding of probable cause. *Commonwealth v. Shaw*, 444 Pa. 110, 281 A.2d 897 (1971); *Commonwealth v. Hagen*, 240 Pa.Super. 444, 368 A.2d 318 (1976). However, it was as a result of this incident, in which two young people were found with a map containing directions to the Luddy residence and a quantity of cash and one of them told the police that they were on their way to buy drugs from one of the present appellants, that the police began a four and a half month surveillance of the Luddy residence.

The second paragraph of the affidavit reports the results of this surveillance. Appellants argue that because no specific dates are given, all of the observations must be assumed to have been made at the most remote point in time, and thus should be held stale. *Commonwealth v. Novack*, 233 Pa.Super. 236, 335 A.2d 773 (1975). If the affidavit had ended with the second paragraph we should be inclined to agree, but it did not.

Appellants also argue that the evidence at the suppression hearing established that the only individual identified by name as having been observed during the surveillance had in fact never been at the Luddy residence and that that misidentification constituted a material misstatement in the affidavit.[3] The misidentification was explained at the

3. The Commonwealth argues that the issue of a material misstatement is not properly before us because it was not specifically raised by appellants in their written pre-trial motions. It was, however, raised by one of their co-defendants. The issue was argued by both counsel at the consolidated suppression hearing and the suppression judge made it clear that he was considering it with regard to all defendants, including appellants. The issue was also raised by appellants in their post-verdict motions and was considered by the

suppression hearing as the result of matching automobile registration records with drug conviction records. The police assumed, incorrectly, that the registered owner of one of the automobiles seen at the Luddy residence was the same individual who had a drug conviction. In fact, the registered owner was the father of the individual with the conviction, and it was another son of his who had been at the Luddy residence.

The affidavit as written did clearly imply that the police knew something—the identity of a visitor to the Luddy residence—when in fact they were only making a reasonable guess. Inclusion of a specific detail, such as a name, within an otherwise general statement may give the entire statement an air of strength it would not otherwise have. Obviously, it would have been better for the police to have explained the basis of their identification. However, it does not appear that their failure to do so was with any intent to mislead; and even a deliberate misstatement does not invalidate a warrant if probable cause remains after the deletion of the misstatement. *Commonwealth v. Tucker, supra.* Nor in the context of the entire affidavit was the misstatement here so great as to prevent the issuing authority from making an objective and detached determination of probable cause. *Commonwealth v. Smith,* 250 Pa.Super. 436, 378 A.2d 1015 (1977), *cert. denied,* 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978).

The third and final paragraph of the affidavit contains information provided by an informant. Appellants claim that the affidavit does not meet either of the two requirements of the *Aguilar* test for determining probable cause based on the hearsay statement of an informant.[4]

court en banc and discussed in its opinion. In these circumstances we believe the issue is properly before us. All of the policy reasons for requiring issues to be raised at the earliest possible time have been met. *See Commonwealth v. Throckmorton,* 241 Pa.Super. 62, 68–69, 359 A.2d 444, 447–448 (1976). The record before us for appellate review is identical to what it would have been if appellants rather than their co–defendants had been the ones to have originally raised the issue in their pre–trial motion.

4. The paragraph in question reads:

█ Appellants object that it is not stated in so many words how the affiant knew that the informant had made purchases of marijuana at the Luddy residence. This objection, as we will see, implicates both requirements of the *Aguilar* test. Although the affidavit does not say so in so many words that "the informant told me that he made purchases . . . .", the suppression judge and the court en banc in ruling on the post verdict motions were both willing to read it that way. To do so is to do no more than to give the affidavit the common sense reading we are instructed to give it by such cases as *United States v. Ventresca, supra,* and *Commonwealth v. Billock, supra.*

█ The first requirement of *Aguilar* is that the issuing authority must be informed in sufficient detail so that he is able to judge for himself the persuasiveness of the facts relied upon; the affidavit of probable cause must not be stated in merely conclusory terms. Thus, it is not sufficient for an affidavit to recite that an informant reported certain information. It must also be indicated how it was that the

On February 21, 1978 at 1930 hrs. a reliable informant who has provided another Police Department with information that lead to the apprehention of an individual with Marajuana and who has personnally purchased marajuana at the above mentioned residence from Michael and Richard Luddy on several occassions over the past year and as recently as the week of February 13, 1978 provided the following information to the affiant: That Michael and Richard Luddy deal in Marajuana from their residence in ounce and quarter pound quantities, they also can provide a purchaser with a half pound or more of marajuana, but the purchaser is required to wait a few days so as not to diminish the supply that they have on hand at the residence. That when L.S.D. ACID is availible that Richard and michael Luddy also supply this drug substance from their residence. That Michael and Richard Luddy have a distribution syestem that starts from their residence (for Marijuana) where one Tim Brown of Buckingham who has been observed at the Luddy residence in his Black older Model panel truck on several occasions and as recently as 6:20 P.M. on 2–21–78. That Brown arrives and takes from Michael and Richard Luddy Quarter pound quantities of Marajuana places them in his truck and then distributes these quantities to juvinile or young adult runners who in turn sell the quarter pounds they receive for cash which is then turned back over to Brown. The runners profit from the sales being that they receive a free quarter ounce of marajuana for their own use. The cash is then split between Brown and Richard and Michael Luddy.

informant came to have that information. *Spinelli v. United States, supra.*

Reading the affidavit before us as stating that the informant said that he went to the Luddy residence and purchased marijuana there, we know how the informant knew that marijuana was available there for sale—on the basis of his own observation and experience. The affidavit then goes on in some detail to describe a distribution system for marijuana and other drugs, allegedly based at the Luddy residence. This detail goes well beyond what the issuing authority could fairly infer the informant would have necessarily observed while making a purchase of marijuana at the residence, and we shall therefore not ourselves make such an inference.

The second requirement of *Aguilar* is that the issuing authority must be informed of some of the underlying circumstances from which the officer concluded that the informant was reliable. In *Commonwealth v. Albert*, 264 Pa.Super. 390, 399 A.2d 1106 (1979), we stated:

> With respect to the informant's reliability, this court has pointed to four factors that the magistrate should consider: "(1) Did the informant give prior reliable information? (2) Was the informant's story corroborated by any other sources? (3) Were the informant's statements a declaration against interest? (4) Does the defendant's reputation support the informant's tip?" *Commonwealth v. Ambers*, 225 Pa.Super. 381, 386, 310 A.2d 347, 350 (1973); *see also In re Burton and Burton*, 259 Pa.Super. 20, 393 A.2d 696 (1978). In *In re Burton and Burton, supra*, however, we made it clear that all four factors need not be present to show reliability, and went so far as to say that the absence of all four factors will not automatically preclude a finding "that a substantial basis exists for crediting the hearsay." At 259 Pa.Super. 23, 393 A.2d at 697.

*Id.*, 264 Pa.Super. at 395, 399 A.2d at 1109.

Thus, the bare statement that the informant "has given reliable information in the past" is not sufficient. *Commonwealth v. Mathieson*, 277 Pa.Super. 413, 419 A.2d 1213 (1980).

■ Here, as we have discussed, a fair reading of the affidavit is that the informant told the officers that he had purchased marijuana in the Luddy residence. This constituted a declaration by the informant against his penal interest; as such it was an indication of reliability. *Commonwealth v. Ambers, supra.* The affidavit also recites that the informant had given information to another police department, which had led to the apprehension of an individual with marijuana. Appellant objects that this statement was misleading because it did not affirmatively recite that the apprehension in question did not result in an arrest. In fact, the statement was not misleading but, as the testimony at the suppression hearing shows, entirely accurate. Appellant's argument confuses two issues. We are not at this point concerned with whether the affidavit was invalid because it contained a deliberate material misstatement—as discussed above, it did not—but with whether it contained sufficient information for the issuing authority to decide that the informant was reliable.

Our cases do not establish a rule that an informant may not be found reliable unless his information led to convictions, *Commonwealth v. Albert, supra, Commonwealth v. Hurt*, 256 Pa.Super. 140, 389 A.2d 640 (1978); *Commonwealth v. Archer*, 238 Pa.Super. 103, 352 A.2d 483 (1975). In any case, putting aside entirely the statement about the informant having given information to another police department, still we believe that the informant's statement regarding his own purchase of marijuana at the Luddy residence, most recently no more than ten days before the warrant was issued, was sufficient to show his reliability.

■ We therefore conclude that both requirements of the *Aguilar* test were satisfied. We are particularly willing to read the affidavit sympathetically and as a whole, *Commonwealth v. Bryant, supra*, because there is no suggestion here of police misconduct. As recounted in the affidavit, a spe-

cific incident led the police to begin a four and a half month surveillance of the Luddy residence. After information from the surveillance had been supplemented by a tip from an informant, a warrant was sought and properly executed. It is unfortunate that after so much effort on the part of the police, the warrant affidavit was poorly drafted. However, the contrast between the careful investigation and the poorly drafted affidavit does make particularly relevant the admonition in *United States v. Ventresca, supra,* that "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." 380 U.S. at 108, 85 S.Ct. at 745. The judgment of sentence of Michael Luddy will therefore be affirmed.

The judgment of sentence in Appeal No. 615 is vacated and appellant ordered discharged.

The judgment of sentence in Appeal No. 616 is vacated and a new trial granted.

The judgment of sentence in Appeal No. 514 is affirmed.

VAN der VOORT, J., concurs in the result.