## Commonwealth v. Villego

*Gary E. Hartman*, for the Commonwealth.
*Robert L. McQuaide*, for defendant.

SPICER, *P.J.*, July 16, 1982—

## CONCLUSIONS OF LAW

1. The search warrant was valid.

2. Entry into the building was lawfully done.

3. The search of defendant's person was incidental to the search of the premises pursuant to the warrant but cannot be justified otherwise.

4. The search of the cigarette cartons cannot be justified.

5. Defendant's inculpatory statements are admissible.

6. The Sucrets box and L.S.D. are admissible.

7. The cigarettes are inadmissible.

## DISCUSSION

We will discuss issues as they were chronologically developed.

The search warrant was properly issued on probable cause shown. The two-pronged tests of Aguilar-Spinelli were met easily: Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969), Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964). While it is true that the person sent into defendant's premises was not under constant surveillance, the surveillance was close enough to justify a finding of reliability that what was supposed to have happened did actually happen.

There is some basis for defendant's argument that the warrant was impermissibly broad and authorized an exploratory search. Certainly, the general phrase "any and all contraband subject to seizure" would seem to invite exploratory searches. It apparently did lead to a search for contraband cigarettes for which there was no probable cause.

We do not find that use of the phrase invalidates the remainder of the warrant. We follow the decisions in such cases as U.S. v. Townsend, 394 F.Supp. 736 (E.D. Mich. 1975) and interpret the language "subject to seizure" to authorize seizure of contraband in plain view.

The language relating to L.S.D. is specific and is amply supported by probable cause.

Although the police did not strictly comply with the requirements of Pa.R.Crim.P. 2007, their failure is explained and excused by the invitation by an occupant to enter. The entry was not forceful and cannot, under these circumstances, be said to have been unannounced. The policy reasons behind the knock and announce rule will not be promoted by holding this entry to have been unlawful. There were two policemen in uniform. They were recognized. They were invited to enter. There was no danger of a dangerous confrontation, no risk of needless destruction of private property, and no lack of re-

spect of, or intrusion upon, individual privacy. These are the reasons for the rule: Com. v. Duncan, 257 Pa. Super. 277, 390 A. 2d 820 (1978).

The search of defendant's person cannot be justified on the basis of an arrest (he was not arrested until after the search) or a frisk. The police did not articulate any facts which would have made a Terry frisk proper: Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). Even if a frisk had been proper, it would have been confined to a frisk for weapons and a subsequent search for the Sucrets box would not have been proper.

One might suppose that the search cannot be justified at all since the defendant's person was not listed in the warrant. However, after a careful reading of such cases as Com. v. Luddy, 281 Pa. Super. 541, 422 A. 2d 601 (1980), cert. denied, _____ U.S. _____, _____ S.Ct. _____, 70 L.Ed. 2d 99 (1981), and Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed. 2d 238 (1979), we conclude that the search can be justified as being incidental to the search of the premises.

Cases such as Luddy and Ybarra make it clear that one cannot extend the scope of a search pursuant to a warrant to include persons who merely happen to be present. This is true even though the person may reside on the premises.

A different result attends, we think, when the person searched is specifically named in the probable cause portion of the application and is the person in charge of the premises. In this case, we agree with the Commonwealth that the application would have supported a warrant for the search of defendant's person. He was described as being in possession of the L.S.D. and having sold some to the informant.

Were the rule otherwise, we can see no need for

the Superior Court to have drawn careful distinctions about persons not named in an application and those who are named. An example is the following which appears in Luddy, supra:

The warrant, however, did not authorize a search of his person, nor, in contrast to his two brothers Michael and Richard, was he mentioned in the probable cause section of the warrant: 281 Pa. Super. at 551, 422 A. 2d at 606 (1980).

The police can be faulted for not having requested, specifically, a search of defendant's person. They can also be faulted for not having placed all pertinent information into the search warrant application. This case is a good example why Pa.R.Crim.P. 2002A is needed. However, we do not find the oversight to be fatal. The application states facts that correlate defendant's person and the premises as repositories of L.S.D. In the peculiar facts of this case, defendant's person was just another place to look within the premises. We hold that the search of defendant's person was incidental to the search conducted pursuant to the warrant and therefore lawful.

The search for untaxed cigarettes was unlawful. The Commonwealth argues there was probable cause to believe the unopened cartons contained untaxed cigarettes because the officer had found untaxed cigarettes in the same location on a prior occasion.

We do not think these facts establish a probability that the cigarettes were untaxed. In the absence of evidence of continuing activity, information from the first incident would have been stale: Com. v. David, 299 Pa. Super. 285, 445 A. 2d 757 (1982). The most that can be said for the officer's thoughts is that they were suspicions. The cigarettes were not in plain view so as to justify a search. Appellate cases dealing with similar fact situations have held

searches to be impermissible. For example, a suspicion that a television set might be stolen did not justify taking the back of it off to check the serial number in Com. v. Bowers, 217 Pa. Super. 317, 274 A. 2d 546 (1970).

We think defendant's inculpatory statements are admissible. If defendant had been represented by counsel in this case, the statements would be inadmissible: Com. v. Hilliard, 471 Pa. 318, 370 A. 2d 322 (1977). However, this does not appear to be the rule when counsel is employed in an unrelated case.

We think the discussion in State v. Clawson, _____ W. Va. _____ _____, 270 S.E. 2d 659, 668, 669 (1980) is pertinent.

A further legal question in connection with the present confession is the effect to be given to the fact that at the time the confession was taken the defendant already had counsel appointed on the unrelated crime that he had committed in New Jersey. Most courts which have considered this question have held that the fact that the defendant has counsel on an unrelated charge does not preclude police oficials from obtaining a waiver of counsel for the present interrogation without notice to counsel appointed on the unrelated charge. E.g., Government of Canal Zone v. Sierra, 594 F. 2d 60 (5th Cir. 1979); United States v. Brown, 569 F. 2d 236 (5th Cir. 1978); United States v. Hall, 523 F. 2d 665 (2nd Cir. 1975); United States v. Crook, 502 F. 2d 1378 (3rd Cir. 1974), cert. denied, 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed 2d. 823 (1975); State v. Richmond, 114 Ariz. 186, 560 P. 2d 41 (1977), cert. denied, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed. 2d 1101; Rutledge v. State, 263 Ark. 781, 567 S.W. 2d 283 (1978).

Indeed many courts do not appear to differentiate between the standard for waiver of counsel where

the defendant has counsel on the charge which is the subject of the pending interrogation and where counsel exists on an unrelated charge. United States v. Cobbs, 481 F. 2d 196 (3rd Cir. 1973), cert. denied, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed. 2d 224; United States v. Springer, 460 F. 2d 1344 (7th Cir. 1972), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed. 2d 125; Moore v. Wolff, 495 F. 2d 35 (8th Cir. 1974); State v. McLucas, 172 Conn. 542, 375 A. 2d 1014 (1977); People v. Aldridge, 79 Ill. 2d 87, 37 Ill. Dec. 286, 402 N.E. 2d 176 (1980); Lamb v. Com., 217 Va. 307, 227 S.E. 2d 737 (1976).

There is a need for such a differentiation. Where the defendant has sought or obtained counsel on a pending charge, it is apparent that he has initially exercised his right to counsel and waiver at that stage is not an issue. If Massiah and Miranda and their progeny are to have any meaning, the State should not be permitted to make subsequent overtures to the defendant to see if he wishes to abandon his already exercised right to counsel. To permit the State to subsequently test the defendant's resolve to have counsel by importuning him to waive counsel is to enable the State to wear away at the defendant in the hope of having him recant his earlier decision to have counsel.

This restriction does not mean that the defendant may not voluntarily decide to recant his right to counsel but any reconsideration must occur independently of overtures from the State. Under Bradley the State will bear an even heavier burden to show a voluntary waiver or recantation following an assertion of the right to counsel.

On the other hand, where counsel has been obtained on an unrelated charge, this fact has no particular bearing on whether the defendant is willing to waive counsel on the present charge. It cannot be said from either a constitutional or ethical standpoint

that because a defendant has counsel on one criminal charge, the State is thereby foreclosed from making contact with the defendant on another matter. Government of Canal Zone v. Sierra, 594 F. 2d 60 (5th Cir. 1979); State v. Richmond, 114 Ariz. 186, 560 P. 2d 41 (1977); Rutledge v. State, 263 Ark. 781, 567 S.W. 2d 283 (1978); State v. Sahlie, 277 N.W. 2d 591 (S.D. 1979). The essential point is whether the defendant desires to have counsel on the present charge or whether he will voluntarily waive that right.

This decision is one that necessarily relates to the defendant's state of mind in regard to the present charge and we cannot conclude that an earlier decision to have counsel on an unrelated charge can be automatically assumed on the subsequent charge. Moreover, the State is still required before interrogation to give the defendant his Miranda warnings so that he may at this point make the decision to have counsel on the separate charge. To hold that his prior decision to have counsel on an unrelated charge forecloses further inquiry with the defendant on the new charge would result in an absolute presumption against waiver from a prior collateral occurrence. Apparently only one court has held that a defendant's retention of counsel on an unrelated charge forecloses the State from undertaking interrogation of the defendant on a separate charge without notice to his counsel. People v. Rogers, 48 N.Y. 2d 167, 397 N.E. 2d 709, 422 N.Y.S. 2d 18 (1979). (Footnote omitted.)

The attached order will be entered.

## ORDER

And now, July 16, 1982, defendant's motion for suppression is granted as to all cigarettes seized; otherwise, it is denied.