508 A.2d 589

COMMONWEALTH of Pennsylvania

v.

Warren S. EICHELBERGER, Jr., Appellant.

Superior Court of Pennsylvania.

Argued Feb. 26, 1986.

Filed April 28, 1986.

508

Philip S. Cosentino, Chambersburg, for appellant.

David W. Rahauser, Chambersburg, for Commonwealth, appellee.

Before CAVANAUGH, TAMILIA and CERCONE, JJ.

CERCONE, Judge:

On August 5, 1983, Troopers Weachter, Wilson, Bopp and Marchowski obtained a warrant authorizing a search of appellant's residence.[1] In the affidavit supporting the search warrant, no mention was made of appellant other than reference to the "Warren Eichelberger residence." The troopers staked out the residence for fifteen to twenty minutes and when an automobile arrived at the residence, the officers came onto the premises and requested the identity of the occupant of the house. Appellant identified himself and Trooper Weachter read the search warrant to him, and then escorted him inside.

Either simultaneous with, or prior to the reading of the warrant, Troopers Wilson and Bopp entered the home for

1. The validity of the search warrant is not in question here.

the ostensible purposes of determining who was inside, to prevent the destruction of evidence, and for safety reasons. However, these troopers failed to observe the "knock and announce" rule as required by Pa.R.Crim.P. 2007(a), by entering the residence without giving or making reasonable effort to give notice of their identity, authority and purpose.

Appellant, upon entering the residence, sat down on the first chair and took off his boots. Trooper Weachter then asked him if he had any weapons on his person but did not receive any response. Weachter then told appellant to empty his pockets. Appellant took his wallet from his right rear pants pocket and a plastic bottle containing ten green pills and a small baggy containing white powder from his right front pants pocket and put the items on the kitchen table. Trooper Weachter, standing behind the appellant then inserted his hands into the appellant's rear pants pockets, found nothing, and then reached into both of the front pockets and removed two more baggies containing a white powdery substance.[2] A search of the house was conducted and approximately fifty-five minutes later, it yielded about $4,300 and some suspected marijuana seeds.

Appellant was arrested and charged with violating the Controlled Substance Drug, Device, and Cosmetic Act, 35 P.S. § 780–101 *et seq.* On January 26, 1984, Judge Eppinger granted the suppression of all evidence seized from appellant's residence due to the violation of the "knock and announce" rule, but refused to suppress the evidence seized from his person. A non-jury trial was held on March 6, 1984 before Judge Keller, who found appellant guilty of possession and possession with intent to deliver. Appellant's post-trial motions were denied and sentence was imposed on March 6, 1985.

In this appeal, appellant contends that the lower court erroneously refused to suppress the evidence seized from his person, as the search was unreasonable and in violation

**2.** It was later determined that the green capsules were Plasidyl, a Schedule IV drug and that the three baggies contained various quantities of cocaine.

of the fourth amendment. We conclude that all evidence seized from appellant's person should have been suppressed and accordingly, we reverse and remand for a new trial.

Appellant raises three arguments to support his contention. First, that the search of appellant's pockets went beyond a limited, "Terry" type weapons search, thus constituting an unreasonable search. Second, that the troopers exceeded the scope of their search warrant which authorized only the search of the residence and not the search of appellant's person; and third, that in light of the violation of the "knock and announce" rule, all evidence seized as a result of the search should be suppressed as "fruit of the poisonous tree." Since we have decided to reverse based on the first two arguments for the reasons set forth below, we need not discuss the merits of the "knock and announce" rule argument.

## I.

■ The Commonwealth asserts that the troopers appropriately searched appellant's pockets for security reasons. It is well settled that a law enforcement officer, for his own protection and safety, may conduct a pat-down to find weapons, only if he reasonably believes or suspects that weapons are in the possession of the person he has detained. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In order to conduct a *Terry* search, the Commonwealth must be able to articulate specific facts from which it could be reasonably inferred that appellant is armed and dangerous. *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *Commonwealth v. Luddy,* 281 Pa.Superior Ct. 541, 422 A.2d 601 (1980), *cert. denied* 454 U.S. 825, 102 S.Ct. 114, 70 L.Ed.2d 99 (1981).

■ The lower court found the required reasonable suspicion based on the following findings of fact:

1. the fact that the officer testified the defendant [appellant] acted like he was angry and upset.

2. the defendant's totally inexplicable conduct in sitting down and removing his boots as soon as he entered his home and then walking toward the kitchen table.

3. the defendant's failure to respond to the trooper's inquiry whether he had any knives, guns or other weapons on his person.

4. the defendant's compliance with the trooper's direction that he empty his pockets by the placement of his wallet, a plastic bottle containing 10 pills, and a baggy containing white powder on the kitchen table.

5. the trooper's testimony that he reached into the defendant's pockets "for my own personal protection and because we had a search warrant" (N.T. 9), and "... he could have any type of weapon, razor blade, anything." (N.T. 20).

Lower court opinion at 15.

We are not convinced that the Commonwealth adequately met its burden of showing reasonable suspicion for three reasons. First, Trooper Weachter testified that he had not observed any lumps or anything suspicious on appellant's clothing that would make him believe appellant was carrying a weapon, nor could he point to anything specific which would justify such a belief. Furthermore, appellant was not asked if he had any weapons until after the search warrant was read to him and not until he was being escorted to the house.[3] This delay indicates that the troopers were not fearful for their own safety. *See Commonwealth v. Gillis*, 217 Pa.Superior Ct. 159, 269 A.2d 135 (1970). Lastly, we find it unlikely that a police officer with a reasonable suspicion that his detainee was armed would allow the potentially dangerous person to empty his own pockets.

■ Assuming arguendo, that a reasonable suspicion was aroused, the trooper would have been authorized to conduct a carefully limited search of the outer clothing of appellant

3. Parts of the record indicate that appellant was not asked if he had any weapons until after he entered the house. The testimony is unclear as to the exact time this communication took place.

in an attempt to discover weapons which may be used against him. *Terry v. Ohio, supra* 392 U.S. at 30, 88 S.Ct. at 1884. Instead, the trooper ordered appellant to empty his pockets,[4] after which, the trooper proceeded to place his own hands in appellant's pockets. "The *Terry* case created an exception to the requirement of probable cause, an exception whose *narrow scope* this Court has been careful to maintain." (emphasis supplied). *Ybarra v. Illinois, supra* 444 U.S. at 93–94, 100 S.Ct. at 343–45. The court below has failed to make the important distinction between a limited frisk for weapons and an actual search of one's person. *Terry v. Ohio,* cannot properly be so extended in light of the Supreme Court's own words that "nothing in *Terry* can be understood to allow a generalized cursory search for weapons or, indeed, any search whatever for anything but weapons." *Ybarra v. Illinois, supra* at 93–94, 100 S.Ct. at 343.

## II.

■ The Commonwealth also asserts that the troopers acted within the scope of the search warrant when they searched appellant's pockets. It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched. Article I, Section 8, Pennsylvania Constitution; Pa.R.Crim.P. 2005(b), (c). In addition, the search may not go beyond the scope of the warrant. *Commonwealth v. Searles,* 450 Pa. 384, 302 A.2d 335 (1973). The search warrant presently in question authorized the search of the appellant's home and not appellant's person. The section of the warrant which requires a "specific description of the premises and/or persons to be searched" includes only a

---

4. The Commonwealth has not attempted to justify the search as consensual, but it should be noted that mere acquiescence in the orders, suggestions, or requests of the police can never be equated with consent. *Commonwealth v. Mancini,* 592 Pa.Superior Ct. 592, 490 A.2d 1377 (1985); *Commonwealth v. Burgos,* 223 Pa.Superior Ct. 325, 299 A.2d 34 (1972).

description of the home.[5] Nor was the appellant mentioned in the affidavit of probable cause supporting the search warrant other than by reference to the "Warren Eichelberger residence."

In contrast to what the suppression court opined, the mere mention of appellant's name as owner of the premises to be searched, does not entitle the police to search appellant's person as incident to the search of the premises. As stated in *Commonwealth v. Villego*, 24 D. & C.3d 736, 739 (1982), ". . . one cannot extend the scope of a search pursuant to a warrant to include persons who merely happen to be present. *This is true even though the person may reside on the premises.*" (emphasis supplied).[6]

Appellant claims and we agree, that *Commonwealth v. Luddy*, 281 Pa.Superior Ct. 541, 422 A.2d 601 (1980), *cert. denied* 454 U.S. 825, 102 S.Ct. 114, 70 L.Ed.2d 99 (1981) is directly on point to the present situation. In *Luddy*, as in this case, the defendant was named in a search warrant *as a resident* of the property to be searched. The warrant, however, as in this case, "did not authorize a search of his person." *Luddy, supra*, 281 Pa.Superior Ct. at 551, 422 A.2d at 606. When the search warrant was executed, Edmund Luddy was outside the residence (as was the appellant in the present case), working in a shed near the house to be searched when the police arrived with the search warrant. One of the officers approached Luddy and conducted a pat-down search during which he felt in the

5. This portion of the search warrant states in its entirety, "11068 Williamsport Pike, Antrin Township, Franklin County, Pennsylvania further described as one and one half story house with white aluminum siding and coral shutters and a 3 bay detached garage to the rear of the residence and all vehicles at residence."

6. The suppression court solely relied on *Commonwealth v. Villego, supra* as authority for the view that the mere mention of one's name as the owner of the premises to be searched, subjects that owner to a search of his person incidental to the search of his premises. However, the search of defendant's person in *Villego* was found to be justified only because the defendant was specifically named in the probable cause portion of the application and was described as being in possession of the drugs sought and as having sold some to the informant. Similar facts do not exist in the case *sub judice.*

inside shirt pocket an object that he believed to be a small knife. When examined, the object proved to be a three inch syringe with its cover in place. The officer arrested Luddy for possession of a syringe and conducted a full search of his person which yielded controlled substances. The Superior Court ruled that the evidence should have been suppressed, because

> It is settled that a warrant authorizing the search of a building does not authorize the search of either the persons ... or the property ... of those who merely happen to be present when the warrant is executed. (citations omitted)

*Commonwealth v. Luddy, supra,* 281 Pa.Superior Ct. at 551–552, 422 A.2d at 606–607.[7]

The Commonwealth attempts to distinguish the cases by maintaining that *Luddy* only affords protection to property and persons who merely happen to be present when the warrant is executed and does not protect those who reside on the premises, as does appellant. However, the Commonwealth and the suppression court have overlooked the fact that Luddy was also a resident of the premises to be searched and was so named in the warrant, and therefore, there is no distinction. In light of the holdings in *Luddy*, the similar factual scenario, and the lack of meaningful distinctions between that case and the case presently before the court, we are constrained to find that it is controlling and we are bound by its determinations.

The examination of additional cases further illuminates this area of the law. A warrant to search a person's premises or effects includes the authority to search things under the control of that person. *Commonwealth v. Homsher,* 292 Pa.Superior Ct. 449, 347 A.2d 760 (1981).

---

7. The *Luddy* court also held that the pat-down was an unreasonable search because the Commonwealth could not point to any particular facts which could have justified a belief by the officer that Luddy was armed and dangerous, thus concluding, that the conditions of the narrow exception created by *Terry* were not satisfied. It should be noted that appellant in the instant case suffered a greater intrusion than did Luddy as Trooper Weachter searched the contents of appellant's pockets instead of conducting a limited pat-down for weapons.

For example, in *Commonwealth v. Wheatley*, 266 Pa.Superior Ct. 1, 402 A.2d 1047 (1979), the court held that when the resident of the home to be searched removed his jacket and hung it over a chair, the jacket became part of the general contents of the room and could be searched. Similarly, in *Commonwealth v. Sellers*, 236 Pa.Superior Ct. 191, 344 A.2d 689 (1975), the court upheld the search of a handbag that was discovered as part of the general contents of the room which they were authorized to search.[8]

The Commonwealth interprets this line of cases as justifying a search of a person's pants pockets. With this we must disagree. Items found in a residence which are deemed to be under the control of the resident, must be clearly distinguished from items actually on the resident's person. In *Commonwealth v. Sellers, supra,* while upholding the validity of the search of the handbag, the court unequivocally stressed that the police made no attempt to search the woman, but only searched the room and its contents. Therefore, the Commonwealth's resolve that "a search of a handbag pursuant to a proper warrant is analogous to a request to remove items from the pocket of the individual ..." has no basis in logic or law.

As was observed by Mr. Justice Stewart in *Coolidge v. New Hampshire*, 403 U.S. 443, 474, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564, 587 (1971), once a line has been drawn which establishes the reasonableness of a police intrusion, "there is often not a great deal of difference between the situations closest to it on either side." Yet the burden is upon the Commonwealth to prove that a search or seizure did *not* violate the fourth amendment. *Commonwealth v. Cihylik,* 337 Pa.Superior Ct. 221, 486 A.2d 987 (1985). The Commonwealth has not met its burden.

**8.** On the other hand, where the police find the belongings of a guest among the contents of a room, and have no information concerning that guest, the search of the guest's personal property is constitutionally impermissible as the search warrant cannot be extended to include a search of things not belonging to or under the control of the resident of the premises. *Commonwealth v. Platou,* 455 Pa. 258, 312 A.2d 29 (1973), *cert. denied* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).

Judgment of sentence reversed and case remanded for a new trial. Jurisdiction relinquished.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Judgment of the Court of Common Pleas of Franklin County is reversed and case remanded for a new trial. Jurisdiction is relinquished.