J-S69013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FRANK RAPHIEK CRISTEA | |
| Appellant | No. 940 EDA 2015 |

Appeal from the Judgment of Sentence December 4, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0006967-2013

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED FEBRUARY 04, 2016**

Appellant, Frank Raphiek Cristea, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his convictions for two counts of possession of a controlled substance with intent to deliver ("PWID"), and one count each of possession of a controlled substance and possession of drug paraphernalia.[1]  We affirm and grant counsel's petition to withdraw.

In its findings of facts and conclusions of law, the trial court set forth the relevant facts of this case as follows:

> On Friday, April 12th, 2013, Detective Bruckner received a report from a woman and her juvenile daughter

---

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(32), respectively.

[("Victim")], that [Victim] had been sexually assaulted by [Appellant's] juvenile son on Wednesday, April 10th, 2013.

As per the policy of the Montgomery County District Attorney's Office, Detective Bruckner was not permitted to interview the [Victim] without first arranging for her to be interviewed by Mission Kids. A Mission Kids interview of [Victim] took place on Tuesday, April 16th, 2013, or Monday, April 15th, 2013, which apparently was the first available slot following the weekend.

On Friday, April 19th, 2013, Detective Bruckner applied for a search warrant for the residence of [Appellant's] son…. [Appellant] himself also resided in this apartment. A search warrant was issued…that same date….

[The first search warrant] provided on its face that the police were authorized to search the residence for physical evidence relating to the alleged sexual assault, including but not limited to bedding and clothing.

Detective Bruckner and several other officers arrived at the apartment at approximately 12:55 p.m., on April 19th, [] 2013. The officers repeatedly knocked and announced their presence and purpose but received no response. The officers then discovered that the door to the apartment was unlocked and the officers entered the apartment continuing to announce their presence and purpose.

As soon as the officers entered the apartment[,] Detective Bruckner became aware of an odor of marijuana. The officers then performed a protective sweep of the apartment for officer safety to ascertain that no one was hiding inside.

The officers did not make forcible entry into any area of the apartment to perform their protective sweep but simply moved from room to room checking the rooms and closets to make sure no one was inside.

Upon entering the master bedroom, during the course of the protective sweep, Detective Bruckner observed a pipe of the sort commonly used for smoking marijuana in plain view on a dresser. At this point the officers stopped their

> search of the master bedroom and Detective Nicholas Oropeza left the apartment to seek a second [search] warrant to search for controlled substances and drug paraphernalia.
>
> The requested second [search] warrant was issued, that same date at approximately 2:15 p.m., following which, a search of the master bedroom for narcotics and drug-related paraphernalia was conducted resulting in the discovery and the seizure of [certain] items….

(N.T. Suppression, 8/27/14, at 59-61). Specifically, the search pursuant to the second search warrant led to the discovery of: (1) a Reddi-Wip can with a false bottom that contained seven grams of cocaine, four Xanax pills in a cellophane wrapper, and marijuana; (2) two glass marijuana pipes; (3) numerous plastic baggies regularly used in the sale of narcotics; (4) two scales; (5) one thousand four hundred and sixty dollars ($1,460.00) in U.S. currency; and (6) three glass vials with a liquid believed to be PCP inside. Police also found items that connected Appellant to the master bedroom where police found the contraband, including a court order addressed to Appellant, a PECO Energy bill addressed to Appellant, a debit card in Appellant's name, a prescription pill bottle in Appellant's name, and adult male clothing.

Procedurally, the Commonwealth charged Appellant with three counts each of PWID and possession of a controlled substance, and four counts of possession of drug paraphernalia. On November 27, 2013, Appellant filed an omnibus pre-trial motion, in which he sought the suppression of the items seized during the execution of the second search warrant. After a

hearing on August 27, 2014, the court denied Appellant's motion.

That same day, Appellant proceeded to a bench trial. Prior to trial, the Commonwealth withdrew one count of PWID, two counts of possession of a controlled substance, and three counts of possession of drug paraphernalia. The court convicted Appellant of two counts of PWID, and one count each of possession of a controlled substance and possession of drug paraphernalia. The court deferred sentencing pending the preparation of a pre-sentence investigation ("PSI") report.

On December 4, 2014, the court sentenced Appellant to an aggregate term of two and one-half (2½) to five (5) years' imprisonment, followed by one year of probation. On December 12, 2014, Appellant timely filed a post-sentence motion and an amended post-sentence motion on January 27, 2015. On March 24, 2015, the court denied Appellant's post-sentence motion. Appellant timely filed a notice of appeal on April 1, 2015. On April 15, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After the court granted several extensions of time, Appellant's counsel filed a statement of intent to file an **Anders** brief pursuant to Pa.R.A.P. 1925(c)(4) on June 11, 2015. On July 28, 2015, counsel filed an **Anders** brief and a petition for leave to withdraw as counsel.

As a preliminarily matter, counsel seeks to withdraw his representation pursuant to **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d

493 (1967) and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor **McClendon**[2] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.
>
> \* \* \*
>
> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and

---

2 **Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981).

- 5 -

counsel's references to anything in the record that arguably supports the appeal.

***Santiago, supra*** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Id.*** at 178-79, 978 A.2d at 361.

Instantly, counsel filed a petition to withdraw. The petition states counsel conducted a conscientious review of the record and determined the appeal is wholly frivolous. Counsel also supplied Appellant with a copy of the brief and a letter explaining Appellant's right to retain new counsel or to proceed *pro se* to raise any additional issues Appellant deems worthy of this Court's attention. (***See*** Letter to Appellant, dated 6/11/15, attached to Petition for Leave to Withdraw as Counsel.) In the ***Anders*** brief, counsel provides a summary of the facts and procedural history of the case. Counsel's argument refers to relevant law that might arguably support Appellant's issues. Counsel further states the reasons for his conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially complied with the requirements of ***Anders*** and ***Santiago***.

Counsel raises the following issues on Appellant's behalf:

- 6 -

DID THE TRIAL [COURT] ABUSE [ITS] DISCRETION AND ERR AS A MATTER OF LAW BY FAILING TO SUPPRESS PHYSICAL EVIDENCE FOUND PURSUANT TO A SEARCH WARRANT ISSUED UPON FINDINGS MADE PURSUANT TO A PREVIOUS SEARCH WARRANT THAT CONTAINED STALE INFORMATION AND WAS OTHERWISE NOT SUPPORTED BY FACTS THAT ESTABLISHED PROBABLE CAUSE FOR THE INITIAL SEARCH?

DID THE TRIAL [COURT] ABUSE [ITS] DISCRETION AND ERR AS A MATTER OF LAW BY FAILING TO SUPPRESS PHYSICAL EVIDENCE FOUND PURSUANT TO A SEARCH WARRANT WHEN THE SEARCH WARRANT WAS ISSUED UPON OBSERVATIONS MADE IN LOCATION THAT EXCEEDED THE LAWFUL SCOPE OF THE PREVIOUSLY ISSUED SEARCH WARRANT?

DID THE TRIAL [COURT] ABUSE [ITS] DISCRETION AND ERR AS A MATTER OF LAW BY FAILING TO SUPPRESS PHYSICAL EVIDENCE FOUND PURSUANT TO A SEARCH WARRANT THAT WAS NOT SUPPORTED BY PROBABLE CAUSE DUE TO A LACK OF INDICIA THAT ANY DRUGS OR DRUG PARAPHERNALIA WOULD BE FOUND PURSUANT TO A SEARCH?

DID THE TRIAL [COURT] ERR AS A MATTER OF LAW BY FINDING THAT THE EVIDENCE PRESENTED AT TRIAL WAS LEGALLY SUFFICIENT TO SUPPORT GUILTY VERDICTS ON ALL CHARGES?

(**Anders** Brief at 4).

For purposes of disposition, we combine Appellant's first three issues on appeal. Appellant argues police used the search warrant related to the sexual assault investigation regarding Appellant's son to gain access to Appellant's apartment to look for narcotics. Appellant claims probable cause did not exist for the first search warrant because it was based on stale information, and the lack of probable cause for the first search warrant

rendered the police entry into Appellant's apartment unlawful. Alternatively, Appellant complains the police obtained the evidence used to establish probable cause for the second search warrant while outside the lawful scope of the first search warrant. Appellant also asserts the evidence obtained during the execution of the first search warrant was insufficient to establish the requisite probable cause for the second search warrant. For all of these reasons, Appellant concludes the trial court should have suppressed the evidence seized during the execution of the second search warrant, and this Court should vacate Appellant's judgment of sentence. We disagree.

Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

**_Commonwealth v. Hoppert_**, 39 A.3d 358, 361-62 (Pa.Super. 2012),

*appeal denied*, 618 Pa. 684, 57 A.3d 68 (2012).  For a valid search warrant:

> Article I, Section 8 [of the Pennsylvania Constitution] and the Fourth Amendment [to the United States Constitution]…require that search warrants be supported by probable cause.  The [linchpin] that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause.  Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.
>
> In ***Illinois v. Gates***, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established the totality of the circumstances test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. …[The Pennsylvania Supreme] Court [has] adopted the totality of the circumstance test for purposes of making and reviewing probable cause determinations under Article I, Section 8.  In describing this test, [our Supreme Court] stated:
>
>> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in [***Gates, supra***], the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place….  It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed.  In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

* * *

> Further, a reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

*Commonwealth v. Torres*, 564 Pa. 86, 96-97, 101, 764 A.2d 532, 537-38, 540 (2001).

> … A grudging or negative attitude by reviewing courts toward warrants…is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner.

*Commonwealth v. C. Jones*, 605 Pa. 188, 199-200, 988 A.2d 649, 655 (2010), *cert. denied*, 562 U.S. 832, 131 S.Ct. 110, 178 L.Ed.2d 32 (2010) (some quotations and internal citations omitted).

"The requisite probable cause [for a search warrant] must exist at the time the warrant is issued and be based on facts closely related in time to the date of issuance." *Commonwealth v. T. Jones*, 506 Pa. 262, 269, 484 A.2d 1383, 1387 (1984). "Settled Pennsylvania law establishes that stale information cannot provide probable cause in support of a warrant." *Commonwealth v. Janda*, 14 A.3d 147, 158 (Pa.Super. 2011). "There is no hard and fast rule regarding what constitutes stale information; such determinations must be made on a case-by-case basis." *Commonwealth v. Vergotz*, 616 A.2d 1379, 1382 (Pa.Super. 1992), *appeal denied*, 534 Pa. 648, 627 A.2d 179 (1993). This Court applies a reasonableness standard

when it determines the time limits to be placed on search warrants. ***Id.***

Importantly,

> [A]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

***Janda, supra***, at 158-59 (internal citations omitted). "Mere lapse of time between discovery of criminal activity and issuance of the warrant will not necessarily dissipate probable cause." ***Commonwealth v. Dennis***, 618 A.2d 972, 981 (Pa.Super. 1992), *appeal denied*, 535 Pa. 654, 634 A.2d 218 (1993).

"The scope of a lawful search pursuant to a warrant is defined by the object of the search and the places in which there is probable cause to believe that it may be found." ***Commonwealth v. Taylor***, 565 Pa. 140, 148, 771 A.2d 1261, 1265-66 (2001), *cert. denied*, 534 U.S. 994, 122 S.Ct. 462, 151 L.Ed.2d. 380 (2001). "[T]he search may not go beyond the scope of the warrant." ***Commonwealth v. Eichelberger***, 508 A.2d 589, 592 (Pa.Super. 1986), *appeal denied*, 515 Pa. 619, 531 A.2d 427 (1987). Importantly, police may perform a protective sweep for officer safety without violating the search warrant requirement of the Fourth Amendment, and Article I, Section 8. ***Taylor, supra***. "A protective sweep is a quick and

limited search of premises…conducted to protect the safety of police officers or others." *Id.* at 150, 771 A.2d at 1267. There are two levels of protective sweeps, which may be executed as follows:

> Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately [adjacent to the area to be searched], which could conceal an assailant. The scope of the second level permits a search for attackers further away from the [area to be searched], provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others.

*Id.* A protective sweep should not last any longer than is necessary to dispel the fear of danger. *Id.* at 152, 771 A.2d at 1268.

Where an officer is lawfully present at a particular location, detection of an odor of marijuana constitutes sufficient probable cause to obtain a search warrant. ***Commonwealth v. Johnson***, 68 A.3d 930, 936 (Pa.Super. 2013). ***See also Commonwealth v. Waddell***, 61 A.3d 198, 215 (Pa.Super. 2012) (stating: "Once the odor of marijuana was detected emanating from the residence, the threshold necessary to establish probable cause to obtain a search warrant was met…").

Instantly, on April 12, 2013, Victim contacted police to report a sexual assault allegedly perpetrated by Appellant's juvenile son on April 10, 2013. Per Montgomery County District Attorney's Office policy, police had to schedule a Mission Kids interview for Victim prior to obtaining additional information about the alleged sexual assault. Police scheduled the next

- 12 -

available Mission Kids interview, which occurred on either April 15, 2013 or April 16, 2013. After Mission Kids interviewed Victim, police obtained a search warrant for Appellant's apartment on April 19, 2013. Police executed the search warrant that same day. Between April 12, 2013 and April 19, 2013, police also contacted Appellant to arrange an interview with Appellant's juvenile son. The total passage of time between Victim's report of the alleged sexual assault and the execution of the search warrant was one week. During this time, the police made consistent efforts to further their investigation into the alleged sexual assault. Under these circumstances, the information in the affidavit of probable cause was not stale. *See Janda, supra*; *Vergotz, supra*. Thus, the first search warrant, which authorized a search of Appellant's residence for evidence related to the sexual assault investigation, gave police lawful access to Appellant's apartment.

Further, the first search warrant authorized a search of Appellant's residence for evidence in connection to the sexual assault investigation; it did not limit the police search to a specific portion of the apartment. Upon entry into Appellant's residence, and per police protocol, police conducted a protective sweep of the apartment. The officers did a visual inspection of the whole residence to determine if anyone was hiding. During the protective sweep, police saw drug paraphernalia in plain view on top of the dresser in the master bedroom. Under these circumstances, police did not

exceed the scope of the first search warrant because the warrant gave police permission to search the residence as a whole, and police were permitted to perform a cursory protective sweep for officer safety upon entry to the apartment. *See Eichelberger, supra*; *Taylor, supra*. Thus, the police legally obtained the information used to support the second search warrant.

Finally, police smelled an odor of marijuana as soon as they entered Appellant's apartment to execute the first search warrant. Police also observed drug paraphernalia on top of the dresser in the master bedroom during the protective sweep. The odor of marijuana and the presence of drug paraphernalia were sufficient to establish probable cause for the second search warrant. *See Johnson, supra*; *Waddell, supra*. Therefore, the court properly denied Appellant's motion to suppress the evidence, and Appellant's first three issues on appeal warrant no relief.

In his fourth issue, Appellant argues the evidence introduced at trial did not prove that the drugs and drug paraphernalia found in the master bedroom belonged to Appellant. Appellant concludes the evidence at trial was insufficient to support his possession of a controlled substance, possession of drug paraphernalia, and PWID convictions, and this Court should vacate his judgment of sentence. We disagree.

A challenge to the sufficiency of the evidence implicates the following legal principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at

trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)

(quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super.

2003)).

The Crimes Code defines possession of a controlled substance as

follows:

**§ 780-113. Prohibited acts; penalties**

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\*   \*   \*

(a)(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise

authorized by this act.

35 P.S. § 780-113(a)(16). When police do not find the drugs on the defendant's person, the Commonwealth is required to establish that the defendant constructively possessed the drugs. *Commonwealth v. Bricker*, 882 A.2d 1008, 1014 (Pa.Super. 2005). "Constructive possession requires proof of the ability to exercise conscious dominion over the [drugs], the power to control the contraband and the intent to exercise such control." *Commonwealth v. Petteway*, 847 A.2d 713, 716 (Pa.Super. 2004). "Constructive possession may be established by the totality of the circumstances." *Bricker, supra*, at 1014.

Possession of drug paraphernalia is defined as:

**§ 780-113.  Prohibited acts; penalties**

*    *    *

(a)(32)  The use of, or possession with intent to use, drug paraphernalia for the purposes of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(32). Drug paraphernalia is defined in relevant part as:

**§ 780-102.  Definitions**

*    *    *

**"Drug paraphernalia"** means all equipment, products and materials of any kind which are used, intended for use

- 16 -

or designed for use in…packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.  …

\*     \*     \*

In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, statements by an owner or by anyone in control of the object concerning its use…the proximity of the object, in time and space, to a direct violation of this act, the proximity of the object to controlled substances, the existence of any residue of controlled substances on the object, direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate a violation of this act…the existence and scope of legitimate uses for the object in the community, and expert testimony concerning its use.

35 P.S. § 780-102.   "To sustain a conviction for possession of drug paraphernalia[,] the Commonwealth must establish that items possessed by [the] defendant were used or intended to be used with a controlled substance so as to constitute drug paraphernalia and this burden may be met by the Commonwealth through circumstantial evidence." ***Commonwealth v. Coleman***, 984 A.2d 998, 1001 (Pa.Super. 2009).

The Crimes Code defines PWID as:

### § 780-113.  Prohibited acts; penalties

\*     \*     \*

(a)(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not

registered or licensed by the appropriate State board, or knowingly creating, delivering, or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). "To convict a person of PWID, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it." **Bricker, supra** at 1015. When reviewing the sufficiency of the evidence to support a PWID conviction, this Court considers "all facts and circumstances surrounding the possession are relevant, and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence." **Id.** "Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." **Commonwealth v. Kirkland**, 831 A.2d 607, 611 (Pa.Super. 2003), *appeal denied*, 577 Pa. 712, 847 A.2d 1280 (2004).

Instantly, Detective Bruckner testified at trial that police found various drugs and drug paraphernalia in the master bedroom of Appellant's residence, including a Reddi-Wip can with a false bottom regularly used to conceal drugs, seven grams of cocaine, four Xanax pills in a cellophane wrapper, marijuana, two glass marijuana pipes, numerous plastic baggies regularly used in the sale of narcotics, two scales, one thousand four hundred and sixty dollars ($1,460.00) in U.S. currency, and three glass vials with a liquid believed to be PCP inside. Detective Bruckner also testified that

police recovered the following items from the master bedroom where police discovered the drugs and drug paraphernalia: (1) a court order addressed to Appellant; (2) a PECO Energy bill addressed to Appellant; (3) a debit card in Appellant's name; (4) a prescription pill bottle in Appellant's name; and (5) adult male clothing. This testimony demonstrated that Appellant had the ability to exercise conscious dominion over the contraband found in his residence, the power to control the contraband, and the intent to exercise such control. *See* 35 P.S. § 780-113(a)(16); *Petteway, supra*. Detective Bruckner's testimony also established Appellant's intent to use the drug paraphernalia with the controlled substances found in Appellant's bedroom. *See* 35 P.S. § 780-113(a)(32); *Coleman, supra*. Thus, sufficient evidence supported Appellant's convictions for possession of a controlled substance and possession of drug paraphernalia.

Additionally, the Commonwealth presented the expert testimony of Detective James Wood, who stated that the following evidence indicated Appellant's possession of the drugs with the intent to deliver: (1) the quantity of the drugs; (2) the way the cocaine was packaged into smaller packets; (3) the presence of baggies typically used in the sale of narcotics; (4) the presence of scales; (5) the $1,460.00 in U.S. currency found in the bedroom and the denominations of that currency; and (6) Appellant's use of the Reddi-Wip can to conceal the drugs. Detective Wood's testimony established Appellant possessed the drugs with the intent to deliver; thus,

sufficient evidence also supported Appellant's conviction for PWID. **_See_** 35 P.S. § 780-113(a)(30); **_Bricker, supra_**. Therefore, Appellant's fourth issue on appeal has no merit. Accordingly, we affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed; counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/4/2016